[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 44 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 45 
The defendants had a right to construct their railroad across the creek and the low lands on each side of its channel, at the place where it was built; but they were bound to do this with all necessary care and skill, so as to save the adjacent proprietors from any injurious consequences which might arise on account of the necessary modification of the natural surface of the ground, so far as should be reasonably practicable. This was the substance of the charge of the judge. *Page 46 
He told the jury that the company was not bound to guard against every possible contingency, but that they were bound to see that the openings were sufficient for any freshet that might reasonably be expected to occur in the stream. In this, I think, he stated the rule with substantial accuracy; though I am of opinion that the principles of the action were not as fully explained as was desirable. But no request to supply the deficiency was made by the defendant's counsel. The exceptions to the charge cannot be sustained.
I am of opinion, though not without some hesitation, that there was evidence enough to submit the case to the jury upon the question whether the road and its embankments and bridges were constructed with suitable care and skill. There was no evidence directly bearing upon the point, by any witnesses of competent knowledge and experience. But the fact that, on three several occasions between the time of the construction of the road, in 1835, to the trial, in 1856, the water and ice had been forced out of the stream upon the plaintiff's land; and that, in the judgment of witnesses who had seen the breaking up of the ice, the diversion of the flood from its natural course on the west side, where it would have been harmless, to the creek and on to the land on the other side, was caused by the embankment, and the want of sufficient apertures for the passage of the water, afforded some evidence that the structures referred to were faulty. When the character of the stream, the peculiar suddenness and violence of the freshets which caused the injury, and their infrequency, are taken into consideration, it is evident that the plaintiff's case was not a strong one; but I think it was one to be determined by the jury. I am, therefore, in favor of sustaining the ruling of the court, in denying the motion for a nonsuit.
But the judge refused to allow the inquiry to be made of a witness, who was an engineer by profession, and who was familiar with the locality and with the defendant's structures, whether the embankment and the bridges were carefully and skillfully constructed with reference to the creek. It does not appear upon what ground the question was rejected by the *Page 47 
justice who presided at the trial. But the opinion of the court, given at the general term, upon the appeal there, puts the right to recover upon the sole question whether the propulsion of the ice and water upon the plaintiff's land, during the freshets referred to, was occasioned by the erection of the defendant's structures. If this is the true question, the inquiry made of the engineer, Gilbert, was immaterial; for, whatever skill and judgment may have been applied to the construction of the road, and though no fault whatever was imputable to the defendants or their servants, they were still, upon this doctrine, responsible for the damages, provided they would not have arisen if the railroad had not been constructed. This, as we have seen, was not the theory upon which the case was given to the jury at the Circuit; and, hence, the opinion of the general term consistently declares that the charge was more favorable to the defendants than the law would warrant. The general term proceed to state, in effect, that the defendants, though authorized by law to construct the road on the course on which it is located, are still liable for any interference with the water, either that which would ordinarily flow in the stream or that which is superinduced by a freshet, to the prejudice of a third person, to the same extent that a private individual would be liable for similar acts upon his own land. If this be a correct statement of the law, the question of negligence, or want of due skill and judgment, in the construction of the road, was not in the case; for I suppose that the maxim, aqua currit et debet currere,
absolutely prohibits an individual from interfering with the natural flow of water to the prejudice of another riparian owner, upon any pretence, and subjects him to damages at the suit of any party injured, without regard to any question of negligence or want of care. If one chooses of his own authority to interfere with a water-course, even upon his own land, he, as a general rule, does it at his peril, as respects other riparian owners above or below. But the rule is different where one acts under the authority of law. There he has the sanction of the State for what he does, and, unless he commits a fault in the manner of doing it, he is completely justified. *Page 48 
This is, of course, to be understood as limited to cases in which the legislature has the constitutional power to act. If, therefore, a corporation or an officer should be authorized by a statute to take the property of individuals for any purpose, however public or generally beneficial, without compensation, or, for a private use, making compensation, the pretended authority would be wholly void, and, of course, could afford no protection to any one. But this limitation has no application to cases where property is not taken, but only subjected to damages consequential upon some act done by the State or pursuant to its authority. Some doubt at one time existed as to this distinction; but the question was directly presented in Radcliff's Executors
v. The Mayor, c., of Brooklyn (4 Comst., 195); and it was there determined, by the unanimous judgment of the court, that, where persons are authorized by the legislature to perform acts in which the public are interested, such as grading, leveling and improving streets and highways and the like, and they act with proper care and prudence, they are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway. The doctrine is equally applicable to the construction of a railroad by a private corporation, for the enterprise is considered a public one, and the authority is conferred for the public benefit. It is on this account that such corporations are authorized to exercise the right of eminent domain, which could not be conferred in respect to any other than a public undertaking. (Bloodgood v. The M. H.R.R. Co., 18 Wend., 9; Davis v. The Mayor, c., of N.Y., 4 Kern., 523.)
A number of cases are referred to in the opinion of the general term, as tending to establish the doctrine that the defendants are liable for all damages consequent upon the erection of their works, irrespective of the question of negligence or want of care and skill in constructing them. Considering the point to have been conclusively adjudged in the case of Radcliff v. TheMayor, c., I might leave the point to stand upon that precedent; but I think it may readily be shown that there *Page 49 
is no well-considered case having a contrary tendency. InBoughton v. Case (18 John., 405), the action was for interrupting the flow of the water along a turnpike road and the ditch belonging to it, so that it was turned into the plaintiff's garden and destroyed his vegetables. Defence, that the defendant was engaged in repairing the turnpike road under the authority of the company. There was a judgment for the plaintiff, which was sustained by the Supreme Court. The judges say that the question before the jury was, whether the bar across the road had been properly constructed, and whether the damage done to the plaintiff's garden might not, with reasonable care and diligence, have been avoided. They declared that it was a case in which the defendants could guard against the injurious consequences, and that it was their duty to do so. "If," they added, "they will not take this reasonable care, and the property of individuals is damaged by their unskillfulness or negligence, they are responsible." The case was one of small moment, and arose in a justice's court, and was not elaborately treated; but it does not aid the plaintiff, for it is clear that the ground of liability was considered to be that which I have stated.
The case of The Rochester White Lead Company v. The City ofRochester (3 Comst., 463), was an action for negligently constructing a culvert under one of the streets of the city, by means of which (on account of the deficient capacity of the passage-way for the water), its flow in a freshet was obstructed, and it was set back upon the plaintiff's manufactory, to his injury. A recovery by the plaintiff was sustained. The action, it will be perceived, sounded in negligence, and the opinion of the court proceeded wholly on the ground that the charge had been established; the main suggestion of the court being that the city had not shown that it employed a competent engineer to construct the culvert. No idea appears to have been entertained that the defendants were responsible for the mere fact of setting back the water, irrespective of the question of negligence. If that were the law, the whole discussion in the case would have been without an object. A late case in the Court of Queen's Bench has been insisted upon, as determining *Page 50 
the precise question against the present defendants. The declaration charged the defendants in that case with erecting an embankment across certain low lands in the valley of the river Dun, "without having or leaving sufficient arches or water-way to allow the flood waters to escape," whereby they were penned back and finally forced upon the plaintiff's land to his injury. The plaintiff had a verdict; and, on the argument of a rule to show cause, two questions were discussed and determined. The first was, whether the owner of the land, under whom the plaintiff claimed as lessee, had not been already compensated for these damages by the award of an arbitrator. The company had purchased a parcel of the land of this proprietor for the track of its road, the price of which was, by agreement, to be determined by an arbitrator, and the submission provided that he should, in addition to the compensation for the land, include all damages done to the remaining estate of the vendor, "occasioned by severance or otherwise, which could have been awarded by a jury, in case the value of such land and compensation for damages had been settled by the verdict of a jury." The arbitrator awarded a gross sum for the value of the land, including the damages mentioned, which was paid; and the defendant insisted that this embraced the damages for which the suit was brought. The court held otherwise, and decided that it only included the damages which were capable of being ascertained and estimated at the time compensation was awarded, and did not reach the damages in question, which, it was said, could neither be foreseen nor even guessed at by the arbitrator. The second question was, whether the defendants were liable, since they had built the road according to the provisions of the act of Parliament authorizing its construction. The act obliged the company to make openings for flood waters in one part of the route, in another county, but was silent as to such openings at the place in question. Hence the defendants insisted, upon the principle expressio unius estexclusio alterius, that they were not bound to make flood gates at that place. Upon that point, the court said, the company might have been at liberty, under the act, to construct *Page 51 
their railway across the lowlands in the manner they had done; but that it did not follow that, in case an unforeseen injury should arise to any one from the mode in which it was constructed, they are not liable to the action. They added that the company might, by proper caution, have avoided the injury which the plaintiff had sustained; "and we think," the opinion concludes, "that the want of such caution was sufficient tosustain the action." (Lawrence v. The Great Northern RailwayCo., 16 Adol. Ellis, N.S., 643.) The case does not, I think, afford any countenance to the idea that the defendants are liable at all events for an injury occasioned by their embankment. They are to use all reasonable caution; but, exercising such caution, they had a right to construct the road, and were not liable to any consequential damages to any one whose property they did not directly invade. The defendants in the case cited contended for impunity, though they had not used due caution, under the peculiar terms of their act. What the present plaintiff contends for is, that the utmost care and skill in constructing the works will not avail the defendants, if, after all, an injury has happened in consequence of the existence of the work, though they had the authority of an act of the legislature to construct it.
An obstruction may be such that any one, whether professional or not, would see at a glance that it was improper and lacked safeguards necessary to be made, and which might effectually prevent injury. Such seems to have been the case just mentioned. There was but a single culvert in the embankment, and the injury was done during a high flood occurring the same year in which the lands were appraised. In this case there was an opening of considerable width, besides the bridge over the creek, for the passage of floods. It does not appear that it had ever proved insufficient except when a high flood was complicated by the breaking up of the ice, and that occurred only thrice in twenty years, and the same thing appears to have happened once at least before the embankment was constructed; and, on one of the occasions after the building of the road, the freshet was destructive to most of the *Page 52 
bridges on the creek. In my opinion, the passage of the creek and valley by the railroad called for the exercise of engineering skill and judgment of a high order. The character of the creek and its habits (if that expression may be used) should have been investigated, and especially its liability to be broken up by a thaw in the winter, when covered with thick ice. It is possible that any embankment across the valley, even when furnished with the full amount of openings which could be left consistently with laying a rail track, would modify, to some extent, the action of the water upon the ice in the case of a winter flood. While I have been engaged in examining the case, the streams in the vicinity of this road have been opened by a spring flood, and the track has been covered for a considerable distance by ice and debris, so that the trains have been stopped for a considerable time. Whether it was practically possible to have fixed the grade so that this would not have happened, can only be determined by the judgment of men skilled in such matters. The defendants, as the judge at the trial very properly said, were not insurers. But they were authorized to build the railroad at the place where they did build it; and if, necessarily and in spite of all reasonable safeguards and precautions in constructing the work, occasional disturbance to adjoining lands would arise from a winter freshet, it was the misfortune of the plaintiff that he had lands exposed to such occurrences.
There are two other cases mentioned in the opinion of the general term, namely, Fletcher v. The Auburn and SyracuseRailroad Company (25 Wend., 462), and Brown v. The Cayuga,c., Railroad Company (2 Kern., 486). The first of these cases is substantially overruled in the one referred to in 4 Comstock, 195. In the other case the only question presented was, whether a party continuing a nuisance was liable if he had not had notice to remove it. The concluding sentence in the last opinion given in that case, was written when the writer had not in his mind the case in which Fletcher v. The Auburn Company was reconsidered; but no part of that opinion was adopted by the court. The case itself raised no question material to the *Page 53 
present inquiry; and it cannot therefore be considered a precedent in the case under consideration.
I am of opinion that the judgment should be reversed, on account of the erroneous ruling upon the question of evidence.
HOYT, J., dissented; COMSTOCK, Ch. J., and LOTT, J., did not sit in the case.
Judgment reversed, and new trial ordered.