ARNOLD and others *vs.* THE HUDSON RIVER RAILROAD
COMPANY.

A. being the owner of a nail factory, together with the easement, or right, to
carry the waters of a creek across a certain parcel of land thereto, the defend-
ant, for the purpose of constructing its railroad, acquired by purchase a por-
tion of the land subject to such easement. The road being constructed in
such a manner, and upon such a grade, that the water could no longer be
conveyed to the factory across the land in a straight trunk, the defendant
took down the original raceway, and carried the water under the railroad
track, in a new trunk built for that purpose. A. accepted the new structure
without objection, and used the water flowing through it, during his life;
*Held*, that such acceptance of the substituted structure was in judgment of
law a compensation for all damages sustained by A. in consequence of the
removal of the original raceway.

The legislature may rightfully authorize the construction of railroads, or other
works of a public nature, without requiring compensation to be made to
persons whose property has not actually been taken, or appropriated, for the
use thereof, but who may, nevertheless, suffer indirect or consequential
damages by the construction of such works.

The case of a railroad company acquiring its roadway subject to an easement or
servitude appurtenant to mill property, consisting of the right to carry water
across the land of another, to the mill, is within the above principle.

If the owners suffer an injury by having the easement impaired, this is an
injury which the property suffers in consequence of the construction of a
public work, under legal authority, and not of the *taking* of the property.

Such a loss is to be regarded as *damnum absque injuria*, except in cases where,
by statute, compensation is required to be made.

APPEAL by the plaintiffs from a judgment ordered at the
circuit, on a trial before the court, without a jury. The
plaintiffs alleged in their complaint that Daniel Arnold, late
of the city of Poughkeepsie, owned, in fee, the right to take
a certain amount and quantity of water out of a certain pond,
made by a dam built and maintained across the Fallkill creek,
east of Water street, in the city of Poughkeepsie, and to use
the same for driving the machinery of certain factories owned
by him, situated upon the west side of Water street, in said
city of Poughkeepsie; and, also, the right to carry the water
from said pond and dam, to said factories, over and across
certain lands and premises, now owned by George Innis and

others, in a raceway or trunk, and either over or under the ground ; that the said David Arnold had constructed a raceway across the lands last mentioned, for the purpose of conveying the water from the said dam to the said factories, as he had a right to do, and was accustomed to convey the water by said raceway to the factories aforesaid, which said raceway was constructed upon a straight line from said dam to the wheel upon which the water was discharged, without any interruption in direction or descent. That the said David Arnold being so seised and possessed of said easement and estate in fee, died during the year 1864, leaving a last will, whereby he devised the same to the above named plaintiffs, as tenants in common, and they are now the owners in fee, and in possession thereof. And the plaintiffs alleged that the defendants had entered in and upon the lands aforesaid, across which said raceway was constructed, and over which the said David Arnold carried the water to his factories, as he had a right to do, and wrongfully broke up and interrupted said water course, and without right or authority altered the same, so as to make the said water course pass under the track, and rails laid down and used by them, the said defendants, and so as to diminish the power and increase the expense and inconvenience of maintaining and using the same, and by means of the wrongful acts, and interference with, and alterations of the said raceway, it already needs repair and reconstruction, in that portion thereof which was taken up by the defendants ; whereas, the original trunk, where it has not been interfered with, remains in good order ; nor would any portion of the same have been worn out or destroyed by use, if the same had not been wrongfully interfered with by the defendants. That the defendants refuse to restore the said water course, and they refuse to repair or maintain the said raceway, or to pay any loss, damage or expense occasioned by their said wrongful acts. And the plaintiffs alleged that they had sustained loss and damage by the wrongful acts of the defendants in the premises, to the amount of $6000, and

they prayed judgment for such damages, besides costs of this suit.

The defendants, by their answer, denied the allegations of the complaint, and alleged,

2d. That they, the defendants, are a corporation organized under an act of the legislature of the state of New York, entitled, " An act to authorize the construction of a railroad between New York and Albany," passed May 12, 1846, and whatever acts were done by them, in reference to the water course, raceway, trunk, rights, easements and estate, which, in the said complaint, are alleged to have pertained to David Arnold, or to the plaintiffs, were done under and in pursuance of the authority of the said act, and of the acts amendatory thereof.

3d. That it was necessary, for the construction of the defendants railroad, between the cities of New York and Albany, to intersect and cross said water course; whereupon the defendants constructed their ways across and upon the same, and they restored the said water course, thus intersected, to its former state, in a sufficient manner, so as not to have impaired its usefulness.

4th. That the said David Arnold, at the time of the said construction and restoration, licensed and authorized the same, and approved of and acquisesced in the manner of the said restoration.

5th. That the defendants, before doing any act in reference to the said water course, raceway or trunk, or to the said alleged rights, easement or estate, became, by purchase, and ever since have been, and now are, the owners in fee of the land over and upon which it is claimed the water course, raceway or trunk was constructed, and in reference to which it is claimed that the alleged rights, easement or estate existed.

6th. That the cause of action, alleged in the complaint, did not accrue within six years before the commencement of this action.

Before commencing the trial, the parties, by their counsel,

Arnold *v.* Hudson River R. R. Co.

consented that upon the trial, if the judge should decide that the plaintiffs had a right of action, he should determine whether the plaintiffs were entitled to damages, and if so, might order the same to be assessed by a jury, or by a referee, or order a judgment directing the defendants to reconstruct and repair, and keep in repair, the apparatus built by the defendants to carry water across their track to the plaintiffs' mill, and should enter judgment accordingly, amending the pleadings, if necessary.

At the close of the testimony, the defendants' counsel moved to dismiss the complaint, and for judgment, on the ground that the defendants were authorized to do what they did, without compensation to Mr. Arnold. And that, if not, the plaintiffs' recovery was barred by the statute of limitations. The judge reserved the question, and afterwards found and decided as follows :

1st. That the several statements in the complaint, except as to the right of the defendants to do the acts complained of, and except as hereinafter found are substantially true.

2d. That the defendants are a corporation duly organized under the act of the legislature referred to in their answer, and did the acts complained of in the year 1850, in constructing their road, and under the authority of the said acts, and none of the said acts were committed since the year 1850.

3d. That the acts complained of were not done with the express consent of David Arnold in said complaint named, then the owner of the right alleged to have been violated, and under whom the plaintiffs claim title, but they were made with his knowledge, and he acquiesced in the change made by the defendants, having used the substituted structure from the time it was made, and repaired the same from time to time, until the time of his death in 1864 ; and the plaintiffs have since his death applied to the defendants to repair such substituted structure.

4th. That the said David Arnold accepted the substituted structure as a compensation from the defendants for all dam-

ages sustained by him by reason or in consequence of their said acts, and in satisfaction thereof.

The said judge further found, at the request of the plaintiffs, on settling the case,

5th. That neither David Arnold, nor the plaintiffs, ever expressly agreed to accept the new structure placed there by the defendants as an equivalent for the structure built by him.

6th. That the defendants broke and interrupted a portion of the original structure, without David Arnold's knowledge, he not being apprised of it until the defendants had commenced the work of taking it down.

7th. That David Arnold forebore to prosecute or restrain the company at the time, upon being told by their agent, that they would make the water course as good as before, at their expense, and would keep the new structure in repair.

8th. That neither he nor the plaintiffs ever did any other act of acquiescence in what the defendants did, than by using the new structure, substituted for the old, in taking the water which flowed through it on their wheel, and taking the charge and control thereof, and by repairing the same, and calling upon the defendants to repair it, when it became out of order.

Upon the preceding facts the judge found, as a conclusion of law, that the plaintiffs had not established a cause of action against the defendants, and that the defendants were entitled to judgment against the plaintiffs, with costs, including an extra allowance of fifty dollars.

*James Emott*, for the appellants. I. The easement or right to carry the water of the Fallkill over the land purchased by the defendants, as well as the aqueduct by means of which that right was used and enjoyed, was property, and entitled precisely as all other property is, to the protection of the law, and the constitutional inhibition against taking private property for public use without compensation. (*People ex rel. Tibbetts* v. *Canal Appraisers*, 13 *Wend.* 355.

*Canal Appraisers* v. *People*, 17 *id.* 571. *Commissioners of Canal Fund* v. *Kempshall*, 26 *Wend.* 404. 36 *Penn. Rep.* 194. *Ex parte Jennings*, 6 *Cowen*, 518–525.)

II. The acts of the defendants in first interrupting the flow of water and destroying the aqueduct, and then replacing it by a less efficient and less durable one, were direct and immediate acts of interference with our property. They were not lawful acts upon their own property, productive of mere consequential damages to us. We have lost, have been deprived of a certain portion of our easement and of our aqueduct. What we have lost the defendants have taken. If they could take away from us the part of which they have deprived us, they could take away the whole. If they could do what they have done with impunity, they could have cut off our aqueduct and turned the water it carried into the bed of the stream. (*Ellicottville Plank Road Co.* v. *Buffalo R. R. Co.*, 20 *Barb.* 644. *Mahon* v. *N. Y. Central R. R. Co.*, 24 *N. Y. Rep.* 658.)

III. The provisions in the defendants' charter authorizing them to cross streams, or water courses, and roads, on condition of restoring them to their usefulness, will not aid them here. 1. This water course and aqueduct was not restored to its former usefulness. The damages we seek are the precise difference between its former and its present condition. 2. Obviously the legislature did not intend or attempt by this clause to confer unlimited power on these defendants. The section referred to only means to authorize an interference with roads and streams without question, so far as merely public rights are concerned. And if it applies to private interests at all, it allows them to be taken *on condition* that the water course be made as good as before. This is only substituting compensation in kind for compensation in money ; and one kind of compensation is equally a condition with the other. The requirement is peremptory. (*See Robinson* v. *N. Y. and Erie R. R.*, 27 *Barb.* 512, 521 ; *Brown*

v. *Cayuga R. R.*, 2 *Kern.* 486 ; 27 *Conn. Rep.* 158 ; 21 *id.*
294.) The cases where this railroad company have built
their road so as to cut·off land from access to the river,
(*Gould* v. *Hudson Riv. R. R. Co.*, 2 *Seld.* 522, and the like,)
have no application to this question. They were decided on
the ground that an owner of land adjacent a public river has
no property in the bed of the stream or its waters, or any
peculiar rights of access to its channel above any other per-
son, by reason of his location. 3. By fair construction of
this part of the defendants' charter, " restoring this aqueduct
to its former usefulness," involves maintaining it at the same
cost to the plaintiffs, and for the same time as the original
aqueduct. Where a man was bound to build and maintain
a.gate, it was held he was bound not only to keep it up, but
to keep it shut. (*Mace* v. *St. John*, 2d *dist. gen. term*, 1863.)
4. The defendants, by erecting any substitute for our original
raceway, admitted their obligation to the full extent to which
we insist upon it, that is, that they were bound to give us
exactly what we had before, or pay us for it. If they were
not bound to do this they were not bound to do any thing.
5. The defendants owned the land and occupied it with their
rails traversed by their trains. They built, and of course
could build for our use just what they chose. They might
have made a structure as complicated, as difficult to use, and
as costly to maintain as they chose. We could not control
them in any way, except by the assertion of the right to insist
upon having returned to us exactly what we had before. No
other principle could be applied.

IV. If the charter of the defendants, in authorizing them
to interfere with natural or artificial water courses in build-
ing their road, provided they restored them to their former
state, so as not to impair their usefulness, has reference to
any thing more than public rights in roads or streams, it
is in violation of the constitution. When they took away
our water course and aqueduct, they took our property.

Arnold *v.* Hudson River R. R. Co.

When they gave us back something else in place of it, they did not return our property, unless they gave us what we had. For what they took away from us we are entitled to "just compensation," and until it was made their acts were wrongful. (*Ellicottville Pl. R. Co.* v. *Buffalo R. R. Co.*, 20 *Barb.* 644. *Robinson* v. *N. Y. and Erie R. R. Co.*, 27 *id.* 512, 521. *Brown* v. *Cayuga and Susq. R. R. Co.*, 2 *Kern.* 486. *Matter of Hamilton Av.* 14 *Barb.* 405. *Miller* v. *N. Y. and Erie R. R. Co.*, 21 *id.* 513.)

V. The decision of the learned judge, before whom the cause was tried, that David Arnold acquiesced in the acts of the defendants, and accepted their substituted structure as a compensation for damages and satisfaction for their acts, and he and his devisees are thereby barred of any action against the defendants, we respectfully submit is erroneous. 1. The only acquiescence alleged is by using the new structure, by calling on the defendants to repair it, and by repairing it ourselves when they refused to do so. 2. This is not an acceptance or an acquiescence which would bar this suit, because our use of the structure, and our forbearance to prosecute for the change, or to prevent it when first attempted, was upon condition, and under express agreement by the defendants to keep the new structure in repair. It is true this agreement was verbal, but so was our consent and acceptance of the new structure. If they can base a defense on the one, we can sustain an action on the other. 3. The original aqueduct was real estate, and the easement which was enjoyed by means of it was an incorporeal hereditament. Neither could be granted, surrendered or released except by writing, and any such consent or acquiescence as the defendants allege, and the judge finds, was at most a *license.* Such license was revocable at will, and was revoked by the death of David Arnold. (*Eggleston* v. *N. Y. and Harlem R. R. Co.*, 35 *Barb.* 162.)

VI. The plaintiffs' remedy is not barred by the statute of limitations. The action or claim of the plaintiffs is not

for a liability created by statute. The defendants' liability is for an injury to a right of property, which the statute did not create or confer, and the remedy for its violation is not a statute remedy. To argue otherwise assumes that the defendants had a right to do what they did, that they did not take or invade our property, and would be under no obligation or liability to us at all, but for the voluntary act of the legislature requiring them to return the stream to its former usefulness. This is the very point in dispute.

VII. If the theory of the judge at the circuit be correct, that we accepted this structure, then we are entitled to this action to enforce the condition under which we accepted it. This is a continuing obligation, and we have a right to an action either for damages or specific performance whenever it is broken.

VIII. But if, as we assert, the defendants have invaded and taken our property without right and without compensation, their acts have been a continuing wrong, and an action would lie constantly for the damage they occasioned. Each day's continuance of the defendants' interference with our easement, of their deprivation of what we originally had, is a new wrong ; and we can sue for any special loss thereby at any time within six years after its occurrence. (*Hampden* v. *N. Y. and N. H. R. R. Co.,* 27 *Conn. Rep.* 158. 10 *Wend.* 179.)

IX. It is no answer to this to say that the defendants' original acts were lawful. That depends upon whether their acts were a taking—a withdrawing from, us of property. If they were so, then they were not and could not be made lawful without compensation.

X. If the erecting the new structure is considered compensation, then it must be equal or equivalent to the old ; and when it fails to be, we sustain a damage for which an action then accrues.

If this company had a right to enter on and interfere with our water course, but at the same time were bound to give

Arnold *v.* Hudson River R. R. Co.

it back again as good, that is as effective, as permanent and as inexpensive as before, David Arnold could bring no action against them until it turned out that his expense in keeping his water communication was actually increased. What action could he have brought the day after this new structure was erected, if the railroad company had a right to build it in lieu of his own, only being bound to make it as good as before to him. Clearly he could not sue until it proved not to be so. No court at that time would have listened to a speculation on the future. (21 *Conn. R.* 294. 37 *Penn. R.* 469. 19 *Eng. L. and Eq.* 295.)

*Chas. A. Rapallo*, for the respondents. I. By the 14th section of their charter the defendants are authorized to construct their railway across water courses, but they are required to restore any water courses thus intersected "in a sufficient manner so as not to have impaired its usefulness." The crossing or intersection of David Arnold's water course was therefore a lawful act, and did not give him or his representatives any cause of action. The only cause of action which he could by any possibility have had, would have been for a failure (if it had occurred) to restore the water course in a sufficient manner, as directed by the act.

II. The provision of the charter authorizing the intersection or crossing of water courses is undoubtedly valid. Even if the interference with such easements should be regarded as a taking of private property, within the meaning of the constitution, this provision of the charter is free from objection, because it provides adequate compensation, by requiring the company to restore the water course in a sufficient manner, &c. The consequential injury to adjoining lands by the construction of a public work, is not a taking of property within the meaning of the constitution, and compensation need not be made therefor. (*Corey* v. *Buff. &c. R. R. Co.*, 23 *Barb.* 482. *Gould* v. *Hud. Riv. R. R. Co.*, 2 *Seld.* 522.

*Getty* v. *Same,* 21 *Barb.* 617. *Bellinger* v. *N. Y. Central R. R. Co.,* 23 *N. Y. Rep.* 42. *Ely* v. *City of Rochester,* 26 *Barb.* 133. *Plant* v. *L. I. R. R. Co.,* 10 *id.* 26.) Similar provisions as to crossing streams and cutting of wharves have been recognized as valid. (*Tillotson* v. *Hud. Riv. R. R. Co.,* 5 *Selden,* 575. *Cocks* v. *Same.*) And this, though the substituted structure was less convenient than the former one.

III. The evidence on the trial was sufficient to sustain the findings of the court, that David Arnold acquiesced in the change made by the defendants in the water course, and accepted the substituted structure as a compensation from the defendants, for all damages sustained by him in consequence of their acts, and in satisfaction thereof.

IV. If the substituted structure was sufficient, or was accepted as a sufficient compliance with the requirements of the act, neither David Arnold nor his devisees could have any action against the defendants. If it was not sufficient, and was not accepted, David Arnold had a right of action at once upon its completion, in the year 1850, and that right of action is barred by the statute of limitations. The statute begins to run from the time of the wrongful act or omission ; not from the time the resulting injury is developed. (*Troup* v. *Smith,* 20 *John.* 32. *Argall* v. *Bryant,* 1 *Sandf.* 98, *and cases cited.*)

V. The statement of the defendants' land agent to David Arnold, that the company would make the water course as good as before, and keep the new structure in repair, does not afford a foundation for this action. 1. The company had a right, without Arnold's consent, to alter the water course, and the extent of the responsibility they incurred by so doing was to make the structure as good as before ; there was therefore *no consideration* for a further promise to keep it in repair. 2. Some special authority in the land agent to make such a contract should have been shown. It was no

Arnold *v.* Hudson River R. R. Co.

part of his general duty to make contracts imposing greater obligations on the company than were imposed upon it by the statute. 3. This action is not brought upon any such contract. If it were, it would be a sufficient answer that the contract not being in writing was void, under statute of frauds — not being to be performed within a year.

VI. Even if David Arnold had a cause of action, it did not pass to the plaintiffs, as his devisees of the mill property. They are clearly not entitled to any damages sustained by him in his lifetime. They took, under his will, the water course as it was at the time of his decease ; and even if the obligation of the defendants to restore it to its former usefulness had not been complied with, and it should be regarded as analogous to a covenant running with the land, yet such a covenant, after breach, would not pass to the devisee. It ceases, on its breach, to be a covenant real, and no longer runs with the land. (4 *John.* 72. 21 *Wend.* 120, *per Cowen, J. p.* 123. 5 *Conn.* 504.) The change in the water course was a permanent one. Whatever injury resulted therefrom was necessarily perpetual. The whole injury was therefore done in the lifetime of David Arnold, and if he had brought his action he could have recovered all his damages in one action, and could not have brought successive actions. No right of action passed to his devisees. (*See Fish* v. *Folley,* 6 *Hill,* 54.)

VII. The judgment should be affirmed.

*By the Court,* GILBERT, J. We are of the opinion that the acceptance by the plaintiffs' testator, of the structure which the defendants substituted in place of the one removed by them, was in judgment of law a compensation for the damages alleged to have been done to said testator. It was constructed by them for the purpose of fulfilling all their obligations in the premises to such testator. He accepted it as such. If it has failed to prove as durable as the old

structure, (of which there is no certain evidence,) there is no principle of law or equity which would have allowed him to complain.   And certainly the plaintiffs cannot be deemed to have acquired the easement in question otherwise than as qualified by the legal effect of these acts of their devisor. But if this view be erroneous, there are other principles which are fatal to the plaintiffs' right of recovery.   The right of the plaintiffs is an easement, and is appurtenant to their mill property.   It consists of the right to carry water from the Fallkill creek across the land of their testator's grantor, to the mill.   This burden or servitude was annexed to the lands of said grantor, and the defendants, in the capacity of private owners, must be deemed to have acquired their roadway in subjection to this easement or servitude. (*Lampman* v. *Milks,* 21 *N. Y. Rep.* 505.)

But the general railroad act, which is expressly made applicable to these defendants, authorizes the defendants to construct their road across or upon the water course in question, and requires them to restore the same to its former state, or to such a state as not *unnecessarily* to have impaired its usefulness.   (*Laws of* 1850, *p.* 211, § 28, *subd.* 5, § 49.)   The charter of the defendants contained the same provision, omitting the word "*unnecessarily.*"   The work was done in 1850, but whether before or after the passage of the general railroad act, does not appear.   This fact, however, is not material ; for if the defendants were not authorized to make the alteration, because it impaired the usefulness of the easement, they were authorized to continue the substituted structure, unless it "unnecessarily" impaired the easement ; and they would have been liable to the devisor of the plaintiffs only for the damages which accrued between the making of the change and the passage of the general railroad act.   There was no proof of any such damages.

If, then, the legislature had the power to confer this authority upon the defendants, the plaintiffs cannot complain.

because the acts of the defendants were done under legal sanction; and the only obligation imposed upon them by law, was to do the work in a skillful manner, and not *unnecessarily* to impair the usefulness of the easement.

The question therefore is, whether the acts of the defendants, of which the plaintiffs complain, constitute a taking of their property, within the meaning of that provision of the constitution which requires compensation to be made for private property taken for public use. Whatever views I might entertain of this question, if it were new, I am satisfied it is no longer an open one in this state, but has been settled by repeated adjudications. (*Radcliff's Ex'rs* v. *The Mayor of Brooklyn*, 4 *Comst*, 195. *Gould* v. *Hudson Riv. R. R. Co.*, 2 *Seld.* 522. *Bellinger* v. *N. Y. Cent. R. R. Co.*, 23 *N. Y. Rep.* 42. *People* v. *Kerr*, 27 *id.* 193. *Corey* v. *Buffalo, &c. R. R. Co.*, 23 *Barb.* 482. *Getty* v. *Hud. Riv. R. R. Co.*, 21 *id.* 617. *Ely* v. *City of Rochester*, 26 *id.* 133. *Plant* v. *L. I. R. R. Co.*, 10 *id.* 26. *Bradley* v. *N. Y. and N. H. R. R. Co.*, 21 *Conn. Rep.* 294.)

These cases establish the principle that the legislature may rightfully authorize the construction of railroads or other works of a public nature, without requiring compensation to be made to persons whose property has not actually been taken, or appropriated, for the use thereof, but who may nevertheless suffer indirect or consequential damages by the construction of such works.

This case is clearly within the principle stated. What property of the plaintiffs has been taken or appropriated by or for the use of the defendants? None whatever. They may suffer an injury by having the easement or servitude, with which the estate of their grantor and the road way of the defendants are burdened, impaired. But this is an injury which the property of the plaintiffs suffers in consequence of the construction of a public work, under legal authority, and not the taking of their property. Such loss has always

been regarded as *damnum absque injuria,* except in cases where, by statute, compensation is required to be made. (*Vide remarks of Denio, J.* 23 *N. Y. Rep.* 48.)

The judgment must be affirmed, with costs.

[DUTCHESS GENERAL TERM, May 13, 1867. *Scrugham, Lott* and *Gilbert,* Justices.]