524     CASES IN THE SUPREME COURT     [June,

The People v. The Mayor, Aldermen, etc., of the City of Albany.

THE PEOPLE OF THE STATE OF NEW YORK, Respondents, v.
THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY
OF ALBANY, Appellants.

(GENERAL TERM, THIRD DEPARTMENT, JUNE, 1872.)

An injured party is restricted in the recovery of damages, for acts not
intentionally committed and breaches of contract, to such as result natu-
rally and necessarily from the act complained of. And the rule is appli-
cable in all cases, except in those where, for great ends of public justice
punitory damages may also be awarded.

Accordingly, where the State (under chapter 503, Laws 1866) cut away a
portion of a pier belonging to private owners, between the Hudson
river and a basin at Albany, for the purpose of enlarging an opening and
admitting a greater volume of water into the basin; and the defendants
bound themselves, in consideration thereof, to pay all damages to pro-
perty caused by the making of the improvements, and covenanted to keep
and save harmless and indemnify the people, etc., against all claims for
damages accruing to property,—*Held*, that injuries to property, produced
about a year after the completion of the improvement, by a sudden freshet
caused by the breaking away of an unusual ice dam which had formed
above the cut, and let into the basin by reason of the enlargement, were
not recoverable under the obligation.

So *held* where the action was brought by the people on behalf of the owners
of the property damaged.

APPEAL from judgment recovered upon the report of a
referee.

The action was brought by the people of the State, pur-
suant to authority given by chapter 642, of the Laws of 1869
(Sess. Laws, vol. 2, p. 1521), on behalf of certain citizens of
Albany, owners of buildings situate upon the pier at that
place, between the Hudson river and canal basin; and it
claimed to recover damages of the defendant for injuries
caused to the buildings by reason of the enlargement of a cut
from the river into the basin, through the pier, which enlarge-
ment had been made pursuant to chapter 503, of the Laws of
1866, by the State, at the request of the defendants, and upon
the obligation or agreement of the latter to save the people
of the State harmless from liability for injuries caused to pro-
perty, as provided in that act.

The referee found that the direct and immediate cause of the injury to the property, was the formation of an ice dam against the upper side of the Hudson River railroad bridge, above the cut in question, and extending to the distance of a mile or more above the bridge; that the water breaking through this dam, had been carried into the enlarged cut with great force, and entering the basin, was carried first against the city docks, and was thence forced across the basin upon the pier, which it gradually undermined, causing the walls of the buildings in question (which were warehouses and mills) to fall. He also found that if the cut from the river into the basin had remained as before its enlargement, the injuries would not have occurred.

The referee found in favor of the plaintiff for $98,928.42, being the aggregate of the loss sustained by the different owners, with interest from the 12th of January, 1869. Other facts appear in the opinion of the court.

*N. C. Moak* and *S. Hand,* for the appellants.

*W. A. Beach* and *John H. Reynolds,* for the respondents.

Present—POTTER, PARKER and DANIELS, JJ.

DANIELS, J. This action was brought upon a covenant or contract made by the defendants under and in pursuance of section 6 of chapter 503 of the Laws of 1866 (vol. 1, Laws of 1866, p. 1110). By the terms of such contract or covenant, the defendant bound itself to pay "all damages caused to property by the making" of the improvement provided for by that act, and assumed all such liability, and further covenanted and agreed " to and with the people of the State of New York, to at all times keep and save harmless and indemnify the said people against all and any claim or claims for such damages arising or accruing to property," as before stated.

The improvements provided for by this act consisted chiefly

in an enlargement or extension of the space through which the water flowed from the Hudson river into the Albany basin, and the increase of the capacity for its subsequent escape therefrom into the river. The object of the improvement was to secure the passage of an increased volume of water and a greater velocity of current through the basin, in order to prevent it from becoming stagnant, and to avoid the accumulation of filth and other sediment upon the bottom of the basin.

This improvement was applied for through the action of the public authorities of the defendant, and at its instance the act referred to was enacted by the Legislature. Under that consideration, and in pursuance of the provisions made by the act itself, the defendant entered into the contract or covenant already referred to. And, under that act, the improvement was afterward made, and substantially in conformity to the plan proposed by the engineer of the State. In some respects the plan was slightly varied and departed from in the prosecution of the work, but by that departure the volume of water which would otherwise have entered the basin from the river was, to a corresponding extent, diminished. The work of making the improvement was completed in the month of December, 1867. And no evidence was given showing that the work performed in making the improvement had been either unskillfully, negligently or otherwise improperly performed, or that the material made use of was defective, or for any other reason unadapted or inappropriate to the purpose it was used for.

In the absence of such evidence, it must be assumed that the material made use of was in all respects proper for the uses to which it may have been appropriated, and that the work performed was carefully, skillfully and properly done; for a failure in either of those respects is not to be presumed, in the absence of proof showing that to be the fact. (*Starr v. Peck*, 1 Hill, 270, 272–3.)

As no objection has been made to the validity of the statute, and it does not appear that there is any foundation for

such an objection, it follows that the improvement provided for by its terms was a lawful enterprise. And from the manner in which the work was done it is apparent that it was lawfully performed. But, notwithstanding that, if damages had been sustained by property by the making of the improvement, it was contemplated by the statute that the owners of it should be remunerated for the losses so produced and that the duty of making that remuneration should be borne by the defendant in this action. And such was manifest by the tenor and effect of the obligation which the defendant entered into.

On the part of the plaintiff, it is contended that damages within the contemplation of that act were caused to the property maintained upon the pier constructed between the basin and the river. And the present action was brought for the benefit of the owners of such property, in order to compel the defendant to make the remuneration which it is claimed it became obligatory to make by the terms of its covenant or contract. No objection is taken to the form of the action adopted for this purpose, and probably none very well could be, since it has been provided for and sanctioned by an express enactment of the legislature. (Laws of 1869, vol. 2, chap. 642, p. 1521). But this act, authorizing the action in the name of the present plaintiff, in no manner changes or enlarges the liability of the defendant. For it was provided in it, that nothing therein contained should be construed as in any way affecting the liability of the city of Albany upon its bond. Then the liability, as well as its extent therefor, still depends upon the act of 1866, and the obligation made under it by the defendant.

This obligation is in terms no broader than the statute itself, and either may, therefore, be properly considered as indicating the rule by which that liability is to be ascertained.

The damages to property, for the recovery of which this action was brought, were neither produced nor sustained during the progress of the work by which the improvement was made. And no act performed during the progress of the

work is claimed to have produced the injury causing the damage. But it appeared before the referee, and the fact was found by him as the foundation of the defendant's liability under the terms of the obligation, that more than one year after the improvement was completed, and the work required in its accomplishment had been entirely performed, the ice in the Hudson river was broken up by an increase in the volume of the water; that this ice was retained in the river by the obstruction presented by the railroad bridge, which crossed the river intermediately the upper and lower termini of the pier, and by that cause, and the sinking of the ice to the bottom of the river, the water was forced through the basin in such quantity, and with such velocity, as in its course and the direction given to it by the improvement made, it undermined and washed away a portion of the pier, and produced the injury and damage now presented as a just demand against the defendant. The agency which the improvement had in producing this injury was limited to the facility afforded by it for the obstructed water of the river to flow through the basin; and that was created by the increased channel, and the change in the direction given to it, through which the water entered into the basin. This channel, before the improvement was made, was 110 feet in width, and by that it was extended to the width of 290 feet, and made to communicate with the river at a much more acute angle than had been previously maintained. In consequence of this change, the water passed more readily and in much greater quantity into the basin than it had done before the change was made; and the pier, where it was encountered by the current created by this additional flow of water, proved unable to resist its power. The consequence was that it was undermined, and the injury in controversy was thereby produced.

But the referee nowhere says that this injury was caused by the improvement made, otherwise than by allowing the water to enter the basin in such a volume and manner as to produce it. This increased flow in the volume of water was the design and object of the improve-

ment which was made; for it was devised, authorized and executed with the expectation that it would cause the water to pass into and through the basin in such quantity and with so much rapidity as to carry with it the earth and filth which otherwise would accumulate in the basin itself. Of course, it was not supposed that the pier would prove insufficient to resist the weight and force of the current. That seems to have been an unforeseen result of the increased capacity of the channel into the basin. But this increased capacity, in no logical or legal sense, can be characterized as the cause of the injury. Remotely considered, it might be regarded as the cause, because it exposed the property to the injury sustained by the action of another cause. But the existence of that cause did not depend, either directly or indirectly, upon the improvement. It was in no manner produced by the latter ; but that simply afforded it an opportunity, in the course of subsequent events, to produce the injury, which is a very different thing from producing the injury itself. The direct and immediate cause of the injury, as shown by the evidence and found by the referee, was the quantity and velocity of the water sent through the basin by means of the ice dam obstructing the natural course of the river. And, in legal contemplation, the immediate, and not the remote, cause is to be considered in determining the point of legal liability. Accordingly, the injured party is restricted in the recovery of damages for torts, not intentionally committed, and breaches of contract, to such as result, naturally and necessarily, from the act complained of. This is a rule of general application, including all cases, excepting those in which, for great ends of public justice, punitory damages may also be awarded and added. (*Crain* v. *Petrie*, 6 Hill, 522; *Hamilton* v. *McPherson*, 28 N. Y., 72; *Passinger* v. *Thorburn*, 34 id., 634; *Ryan* v. *N. Y. Central R. R. Co.*, 35 id., 210; *Railroad Co.* v. *Reeves*, 10 Wallace, 176; *Penn. R. R. Co.* v. *Kerr*, 68 Pa., 353; 2 Greenl. Ev., 5th ed., § 256.)

Under this rule, before a recovery can be had, the damages must appear to have been caused by the act complained of.

In this case, that was not the fact. The act complained of is the improvement, while the cause of the injury was the ice dam which was formed in the river by the obstruction presented by the piers of the railroad bridge, and the body of water sent by means of it through the basin.

The reasonable construction of the terms used in the statute, prescribing the measure of the defendant's liability, necessarily leads to this limitation of its extent; for it was simply the damage to property by making the improvement, and nothing whatever beyond that, which the defendant was required to assume and pay; and none of the damages recovered by the judgment were caused by anything done in making the improvement, for that was finished and completed in December, 1867, while the injury producing the damages was not caused until the month of January, 1869.

Under ordinary circumstances, when a lawful act is performed in a careful, skillful and proper manner, the party performing it is not liable for mere incidental consequences injuriously resulting from it to another's property. (*Radcliff* v. *Mayor of Brooklyn*, 4 Coms., 195; *Thomasson* v. *Agnew*, 24 Miss., 93, 95; *Bellinger* v. *N. Y. Central R. R. Co.*, 23 N. Y., 42, 47, 48; *Goodale* v. *Tuttle*, 29 id., 459; *Trustees of Delhi* v. *Youmans*, 50 Barb., 316, 318–320; *Brand* v. *Hammersmith, etc., R. R. Co.*, 1 Queen's Bench Law Rep., 200.)

A qualification of the defendant's liability, similar to that, together with the further liability for all damages caused by the improvement itself, appears to have been all that the legislature designed to render the defendant responsible for in this instance. If it is not to be restricted in that manner, then the defendant may be made responsible for all future injuries to which property may at any time hereafter become exposed, through causes affecting it, which would not have been encountered if this improvement had not been made; an extent of liability which no one could prudently be expected to incur, even for the purpose of securing the most important benefits from a valuable public improvement. It would be

The People v. The Mayor, Aldermen, etc., of the City of Albany.

too enduring, extended and comprehensive to be supposed to fall within the contemplation of the legislature in providing for the creation of a public improvement of this description. The analogies of the law, the language of the act itself, and the construction already placed upon it in one case arising under the defendant's obligation, are all alike opposed to such an extension of the defendant's liability. (*Coster* v. *Mayor of Albany*, 43 N. Y., 399.) In this case it was held, in the opinion of the court, that the language of the statute "confines the damage to such as is done in the process of this particular work." (Id., 418.) And that necessarily excludes all the demands for which a recovery was permitted by the judgment entered in this cause.

The judgment, therefore, must be reversed; and, as no recovery, under the circumstances shown to exist, can in any event be sustained, the complaint should be dismissed, with costs.

POTTER, J.  I concur, except that I think a new trial should be ordered, instead of a dismissal of the complaint.

PARKER, J.  In view of the construction of this very statute, and obligation assumed by defendant, by the Court of Appeals, in *Coster* v. *Mayor, etc.* (43 N. Y. R., 399.), I am constrained to concur in the foregoing opinion, except that I agree with Judge POTTER in thinking that the judgment should be reversed and a new trial granted, with costs to abide the event; and I think the order of reference should be discharged.

Judgment reversed, order of reference vacated, and **new** trial ordered, with costs to abide event.