AUGUSTA OTTENOT, AS EXECUTRIX, etc., Respondent, *v.* THE NEW YORK, LACKAWANNA AND WESTERN RAIL-WAY COMPANY, Appellant.

Court of Appeals, January 14, 1890.

Reversing 19 N. Y. St. Rep. 465.

1. *Railroads.*—Where a railroad is built by lawful authority, a party who is not an abutting owner upon the street through which it runs, nor has any property rights therein, has no right to complain of its existence, or of any damage caused thereby.

2. *Same. Embankment.*—Where a city has the right and power to construct an embankment in the street, it can authorize the company to construct it, and the latter will have the same immunity from damages as the city would have in case it had built the same.

3. *Same.*—The company, having the authority of the statute and of city ordinances for what it has done, is not liable to the plaintiff, unless it has violated some right of his, inviolably protected by the constitution.

4. *Same. Rule of Damages.*—In case the company was liable, the plaintiff was not entitled to recover for the permanent diminution in the value

of his lots, but was entitled only to recover such damages as he sus-tained prior to the commencement of the action.

Appeal from a judgment of the general term of the superior court of Buffalo, affirming a judgment entered upon a verdict.

*John S. Milburn,* for appellant.

*Le Roy Parker,* for respondent.

EARL, J.—The defendant's railroad tracks were laid in the city of Buffalo, through Water street, running in an easterly and westerly direction. That street crosses Commercial street, which runs northerly and southerly. At the intersection of the two streets the railroad was built upon an embankment in the center of Water street, about five feet and nine inches above the former grade of the street. That the travel upon Commercial street might pass over the railroad at its intersection, it became necessary to raise the grade of that street, for a distance of 115 feet northerly from the side of Water street, by an embankment in the center of the street, with retaining walls made of stone on each side thereof. This embankment commences on the northerly side of the railway in Water street, and runs northerly until it reaches the regular grade of Commercial street. On the westerly side of Commercial street, the plaintiff owned two lots of land, fronting upon that street, side by side, each eighteen and one-half feet wide, the southerly side of the two lots being about thirty-seven feet from the northerly side of Water street; and there were two lots intervening between Water street and plaintiff's lots. Commercial street was sixty feet wide. The embankment in front of the lots in question was twenty-four feet wide, and between it and the lots there was a space of thirty-two feet, fourteen of which was occupied by the sidewalk, and a space of eighteen feet was left for the carriage-way between the sidewalk and the embankment. The embankment opposite the

northerly side of the plaintiff's lots was two feet high, and at the southerly side about four feet high.   The occupants of the lots could not drive upon the embankment directly in front of them, but to get upon it they were obliged to drive northerly about twenty feet, and from that point they could drive southerly in Commercial street over the railroad.   Teams could also pass on the westerly side of the embankment in front of plaintiff's lots in a southerly direction, and thus go upon Water street and pass in either direction thereon, but not, at the intersection of the two streets, over the railroad.   The fee of the street had been taken by the city, and the title of plaintiff to his lots was limited by the westerly side of the street.

The plaintiff brought this action to recover damages to his lots caused by the construction of the embankment in Commercial street, and he recovered damages for the total depreciation of the value of the lots caused thereby.

We are of opinion that upon the facts proved the plaintiff was not entitled to recover.   The railroad was built by lawful authority through Water street; and of its existence there, and of any damages caused thereby, the plaintiff had no right to complain, as he was not an abutting owner upon that street and had no property rights therein.

By the city ordinances granting the defendant the right to construct its railroad in Water street, it was authorized and required to build its embankment, at the intersection of Commercial street, at its present height, so that its cars could pass over the Erie canal; and it was required so to construct its road as to interfere as little as possible with the streets, and to restore any street interfered with to as good condition as it was before such interference as soon as possible; and all its work in Water street and the intersecting streets was to be done under the direction and subject to the approval of the city engineer.   The railroad in Water street and the embankment in Commercial street were constructed in pursuance of the city ordinances, and under the

direction and subject to the approval of the city engineer.

There was no claim upon the trial that the embankment was not carefully, skillfully and properly constructed, or that it could have been so constructed as to interfere less with the plaintiff in the use of his lots than it now does.

If the city had not required any embankment to be constructed in Commercial street so as to carry the travel over the railroad in Water street, the plaintiff would have had no cause of action for damages against the railroad company. If no means for crossing the railroad track at that point had been furnished by the railroad company, the owners of lots on Commercial street would have had no cause of action for the inconvenience caused to them thereby. It is possible that they would have had some remedy by *mandamus* or indictment to compel the railroad company or the city authorities to so grade the streets at their intersection as to admit of travel over the railroad. But there is no principle of law which would give every citizen of Buffalo who had occasion to use the Commercial street a cause of action for the obstruction thereof. So, too, it is clear that if the city itself had undertaken to build this embankment in Commercial street, and had constructed the same as it now is, it would not have been liable to the plaintiff for any damages caused thereby to him. The railroad was not operated upon that embankment. The street was not subjected to any new easement or use. It was still a street for public travel, devoted exclusively to street purposes.

As the city had the right and power to construct the embankment, it could authorize the defendant to construct it, and it would have the same immunity from damages which the city would have. What the defendant did by the direction and under the authority of the city, it did in the discharge of a duty which would otherwise have devolved upon the city, and it has the same immunity, and was under the same responsibility, and under no greater or other. And such is the settled law of this court. In Bellinger *v.*

New York Central Railroad Company, 23 N. Y. 42, Judge
Denio, speaking of .the obstruction of water-courses crossed
by railroads, said : " If one chooses of his own authority
to interfere with a water-course, even upon his own land,
he, as a general rule, does it at his peril as respects other
riparian owners above or below. But the rule is different
where one acts under the authority of law. There he has
the sanction of the state for what he does, and, unless he
commits a fault in the manner of doing it, he is completely
justified. This is of course, to be understood as limited to
cases in which the legislature has the conditional power to
act. If, therefore, a corporation or an officer should be au-
thorized by statute to take the property of individuals for
any purpose, however public or generally beneficial, with-
out compensation, or for a private use, making compensa-
tion, the pretended authority would be wholly void, and, of
course, could afford no protection to anyone; but this lim-
itation has no application to cases where property is not
taken, but only subjected to damages consequential upon
some act done by the state, or pursuant to its authority."

In Uline *v.* New York Central, etc, Railroad Company,
101 N. Y. 98, where the defendant crossed a street in the
city of Albany and raised the grade of the street to conform
to the grade of the railroad and thus damage was caused to
the plaintiff's adjoining property, it was held that the city
could have raised the grade of the street without liability
to abutting owners, and as it could do that, it could autho-
rize the defendant to do so without such liability.

The case of Conklin *v.* New York, Ontario, etc., Railroad
Company, 102 N. Y. 107; 1 N. Y. State Rep. 677, is en-
tirely analogous to this. There the defendant in construct-
ing its road at a highway crossing constructed it below the
grade of the highway through a cutting made across the
highway, and it built a bridge over its road, and with em-
bankments on each side of the railroad graded up the high-
way to the bridge level, higher and longer than the embank-

ment here in question; and the adjoining owner brought. an action to recover $1,500, for damages on account of one of the embankments thus constructed. It was held that he could not recover. There, as here, the embankment took no land from the abutting owner. There the plaintiff owned the fee to the centre of the highway, and yet it was held that his fee in it was subject to no new or different use, but that the land remained as before, a public highway, unchanged in everything but its grade. Finch, J. writing the opinion, said: " If it became such by dedication, compensation for the easement was expressly waived. If taken by right of eminent domain, the compensation paid covered all the damages sustained, among which were necessarily embraced such as might flow from a change of grade required for the public use and convenience. That might be altered by any lawful authority, and whatever of injury or inconvenience should result to the abutting owner was either waived by the dedication or paid for by the original compensation, so that a change of grade upon a highway invades no private right. * * * Beyond a doubt any change of grade by the authorities charged with the public duty of working and maintaining the highway, however it may inconvenience the abutting owner, takes from him no property right for which he has not been compensated; and that is equally true, although the power and duty of changing the grade is conferred by law upon others and the highway commissioner and the need of it springs from another public purpose. The right of the legislature to permit a railroad company to cross a public highway, and either upon the same or a different grade is, of course, conceded. In the latter case a corresponding change in the grade of the highway becomes necessary. That change the commissioners of highways would have a right to make, and so restore the road to the public use without any responsibility to abutters. But that duty is imposed by statute upon the railroad company and the expense charged upon them, and in

the process of restoration they simply stand in the place of the highway commissioners, having, for the purpose of the restoration, and so far as needed, all their official rights and charged with all their duties.   *   *   *   If the law permitting a highway crossing required the road to be restored to public use by the commissioners and the railroad company to reimburse the necessary expense, there could be no question of the right of the commissioners to change the grade without any accountability to the abutting owners; and the case is not changed when, instead, the railroad company is itself compelled to make the restoration. A change made by the commissioners is deemed an incident to the existence of the road as a public highway, and is assumed to be dictated by the public necessity and justified by the resultant public benefit.   *   *   *   So that when, under the statute, a railroad company, as it is commanded to do, enters upon the restoration of a highway, it becomes, for the time and at the place, the constituted public authority to make the restoration ; and if it does so with reasonable prudence and skill, encounters no greater liability than would attend the same change if made by the usual public authority."

The extended quotations from this pertinent authority show plainly that this defendant, bound under the ordinances of the city and by its direction to build this embankment, has the same protection and immunity that the city itself would have had if it had built the same ; and that the city would have been free from responsibility to the abutting owner for any consequential damages resulting from the change in the grade of this street.

In that case the railroad was constructed across a country highway under the general railroad act of 1850, as amended by chapter 133 of the Laws of 1880.   The railroad company was authorized to construct its road across the highway under an obligation to restore it "to its former state, or to such state as not unnecessarily to have impaired its

usefulness." Before entering upon the highway, it was required to have the written consent of the highway commissioners under the act (chap. 300, Laws of 1835), or the order of the supreme court under the general railroad act as amended. Here the railroad was constructed in Water street, crossing Commercial street, under the same provision of the general railroad act, after obtaining the assent of the city as required by that act, and also by the city charter. Laws of 1870, chap. 519, title 3, § 19. So the railroads in that case and in this were constructed under the same public authority, and the railroad companies both there and here incurred the same responsibility and were subject to the same liability by the crossing; and it is impossible to perceive how the one could have immunity from damages to an abutting owner from an embankment, made necessary by the crossing, which must not be extended to the other. The cases certainly cannot be distinguished because in the one case a country highway was crossed and in the other a city street. Nor are they distinguishable because the embankment in this case may be more inconvenient and damaging than in that. If the defendant here is liable for the damages now claimed, it would have been liable for any embankment raising the grade of the street which caused to the abutting owner any appreciable inconvenience and damage. A rule imposing such a responsibility, either upon municipalities or railroad companies, to be enforced by actions, would be very onerous and embarrassing, and lead to much vexatious litigation.

In the absence of some special provision of statute law, imposing responsibility upon municipalities or those who act under them for changing the grade of a street, it must be immaterial what the causes were which made the change of grade necessary or useful. Those who are clothed with the public authority must exercise their discretion as to the reparation and adapation of the streets without exposure to actions by abutting owners for conse-

quential damages caused to them. If the defendant in this case is responsible for these damages, what could it have done to escape them? It was bound to raise the embankment in Water street, and it was bound by the law and the city ordinances to raise the embankment in Commercial street. There was nothing in the street for it to take or which it could take by condemnation proceedings under the general railroad act. It took none of the plaintiff's abutting property, and he had no property rights in the street which were taken. The street remained there as before, devoted exclusively to street purposes, simply being less convenient for the abutting owner.

The defendant, having the authority of the statute and of city ordinances for what it has done, is not liable to the plaintiff, unless it has violated some right of his, inviolably protected by the constitution. What constitutional right of his has been violated? The land over which the street runs has been devoted to street purposes, and may be subjected to all the burdens required for such purposes. Would the plaintiff's constitutional right be violated if the grade of the street were raised for one public purpose, and not violated if raised for another public purpose? Does the *status* of his constitutional rights in any way depend upon the cause which, in the estimation of the public authorities, makes the alteration of grade necessary? And would such rights be invaded every time the grade should be altered so as to cause him some damage?

The principles laid down in the case of Story *v.* N. Y. El. Railway Company, 90 N. Y. 122, do not apply to this case. They were invoked in the Conklin Case, and held not to be applicable. In the Story Case the railway was constructed in the street upon which Story's property abutted. It was held that the street was subjected to a new burden and use, and that it was no longer exclusively devoted to street purposes, and that, so far as the railway interfered with the plaintiff's easements for light, air and access, it took his

property for which the railway company was bound to make him compensation. If this plaintiff had been an abutting owner upon Water street, he might have invoked the principles of that case for his protection.

In the Story Case no one questioned the right of municipal authorities or those acting under them, to alter at pleasure the grade of streets for street purposes, without making compensation to abutters. Danforth, J., writing one of the opinions, said : " It is no doubt true that the grade of a street or highway may be altered by raising or lowering it without liability on the part of the municipality to the abutter. But this is on the ground that the public had already paid a full compensation for all damages to be done by them to the adjacent owners by any reasonable or convenient mode of grading the way. But the principle applicable to such a case does not aid the defendant. There is no change in the street surface intended, but the elevation of a structure useless for general street purposes."

There are, undoubtedly, many cases where serious damages are done to abutting owners upon a street by altering the grade thereof, and the legislature having regard for private rights should generally make some kind of adequate provision to compensate such persons, specifying and regulating the mode of estimating and paying their damages ; and it is believed that such provisions are contained in many of the city charters. One is found in the charter of the city of Buffalo, title 9, § 17, and the plaintiff should have pursued his remedy under that provision.

These views lead to the reversal of the judgment. But we ought further to say that an erroneous rule of damages was adopted at the trial. The plaintiff was not entitled to recover for the permanent diminution in the value of his lots, but was entitled only to recover such damages as he sustained prior to the commencement of the action, within the rule laid down in Uline Case, and in Pond *v.* Metropol-

itan El. R. R. Co., 112 N. Y. 186; 20 N. Y. State Rep., 479.

The judgment should be reversed and a new trial granted, costs to abide event.

FINCH and GRAY, JJ., concur ; RUGER, Ch. J., ANDREWS and PECKHAM, JJ., concur in result on the grounds of there being another remedy, and an erroneous admission of evidence as to damages.