JOHN D. MAIRS et al., as Assignees, etc., Respondents, *v.* THE MANHATTAN REAL ESTATE ASSOCIATION, Appellant.

The firm of W. & Co., plaintiff's assignors, occupied a store in the city of New York, having a cellar and sub-cellar, and also a vault under the sidewalk in front. Defendant erected a building on an adjoining lot, and constructed a vault under the sidewalk in front thereof. In so doing it took up the curb and gutter of the street, and excavated a space in the street extending about two feet outside of the curb, and left the space in front of the outer wall of the vault unfilled. It also excavated a space on the lot of W. & Co., between the wall of said vault and the wall of the vault of W & Co., which did not come quite to the line of the lot; such excavation extended below the foundation of the latter wall; this space communicated with that left in the street. The grade of the street descended so that when the premises were in the ordinary condition the surface water flowed through the gutter in front of the store of W. & Co., and passed off through the gutter in front of defendant's premises. Defendant constructed a dam from the sidewalk in front of the store of W. & Co., which turned the water across the street into the gutter on the other side, but during a heavy rain the dam gave way and let the water into said excavation; thence it found its way under the foundation of and into the vault of W & Co., and their sub-cellar, damaging goods therein. In an action to recover the damages, *held* that defendant was liable, and this without regard to any question of negligence; that it was no defense that the dam was built properly, and due care was taken on its part to protect the premises.

Conceding the rule that, as to the traveling public, an excavation in a street made by consent of the municipal authorities is not *per se* unlawful, and a nuisance, and that the person making the same is only liable for the omission of proper care, such rule does not apply when the excavation causes injury to adjoining land by collecting surface water or diverting it from its proper channel, and thus throwing it upon such land.

A municipal corporation cannot delegate power to private individuals to be exercised for their own private benefit to do injury to the property of their neighbors, and relieve them from responsibility from the damages, or reduce their liability to such as may result from want of proper care.

Where one, in making improvements upon his own premises, or without lawful right, trespasses upon or injures his neighbor's property by casting material thereon, he is liable absolutely for the damage irrespective of any question of care or negligence, and a license from the municipal authorities cannot affect the question of responsibility.

It was claimed by defendants that the water, or a portion thereof, which did the injury found its way through holes in the sidewall of the store of W. & Co, *Held* immaterial; that they were under no obligation to make their wall impervious to water wrongfully thrown upon their premises.

Also *held,* that interest was properly allowed as an item of damages.

Defendant's answer set up a counter-claim for rent due W. 'for premises other than those on which the damage was done, to which there was no reply. No point was made on the trial in respect to this counter-claim, but subsequently defendant moved to reduce the verdict and judgment by the amount of the counter-claim. *Held,* that the court on such motion was justified in taking into consideration the legal objection to the counter-claim; and that the motion was properly denied.

(Argued April 27, 1882 ; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 20, 1880, which affirmed a judgment in favor of plaintiffs, entered upon a verdict, and affirmed an order denying a motion for a new trial. (Reported below, 15 J. & S. 31.)

This action was brought originally by the members of the firm of F. S. Weeks & Co. to recover damages to their stock of goods occasioned by the alleged wrongful acts of the defendant. After the commencement of the action said firm became bankrupts, and the present plaintiffs, as assignees in bankruptcy, were substituted as plaintiffs.

The material facts are stated in the opinion.

*Wheeler H. Peckham* for appellant. Unless defendants were guilty of some neglect or some invasion of their neighbor's property, they are not responsible for any consequences to him of their acts. (*Hays* v. *The Cohoes Co.,* 2 Comst. 159 ; *Auburn Plank-road Co.* v. *Douglass,* 9 N. Y. 444; *La Sala* v. *Holbrook,* 4 Paige, 169.)

*W. Howard Wait* for respondents. The defendants were trespassers, and as such are liable for the consequences of their acts irrespective of any precautions they may have taken to prevent the water from flowing into their own or their neighbor's premises, or of the condition or location of the premises trespassed upon. (*Bailey* v. *Mayor,* 2 Denio, 433.) It makes no difference that the work was lawful and the manner of conducting it workmanlike. (*Adams* v. *Walker,* 34 Conn. 466 ; *Hay* v. *Cohoes Co.,* 2 N. Y. 159; *St. Peter* v. *Denison,*

58 id. 416.) Nor that the damage arose directly from the wrongful act or interference of a third party. (*Congreve* v. *Morgan,* 8 N. Y. 84; *Prixley* v. *Clark,* 35 id. 520; *Bellows* v. *Sacket,* 45 Barb. 102; *Thomas* v. *Kenyon,* 1 Daly, 132; *Jutte* v. *Hughes,* 67 N. Y. 267; *Vanderwiele* v. *Taylor,* 65 id. 341; *Dygett* v. *Schanck,* 23 Wend. 466; *Chase* v. *N. Y. C. R. R. Co.,* 24 Barb. 273.) Whether or not defendants had a permit from the city, giving them permission to construct vaults under their sidewalk was wholly immaterial. (*Lewenthal* v. *Mayor, etc., of New York,* 61 Barb. 511; *Donahue* v. *Mayor, etc., of New York,* 3 Daly, 65; *Lacour* v. *Mayor, etc., of New York,* 3 Duer, 406; *Barton* v. *City of Syracuse,* 36 N. Y. 54; *Storrs* v. *City of Utica,* 17 id. 107; *Creed* v. *Hartman,* 29 id. 591; *Brant* v. *City of Albany,* 5 Hun, 591; *Byrnes* v. *City of Cohoes,* 67 N. Y. 402; *Irwin* v. *Wood,* 51 id. 224.) The charge " and you must, if necessary to give the plaintiffs compensation to the present time, add interest to the amount of the loss " was correct. (2 Parsons on Contracts [ed. of 1860], 382; Sedgwick on Damages, 385; *Green* v. *The Mayor,* 3 Robt. 406; *Walrath* v. *Redfield,* 18 N. Y. 457; *Parrott* v. *Knickerbocker Ice Co.,* 46 id. 361.) The new matters set up in the answer do not fall within the definition of a counter-claim under section 149 of the Code. (*McKenzie* v. *Farrell et al.,* 4 Bosw. 192; *Drake* v. *Cockroft,* 4 E. D. Smith, 34; *Bernheimer* v. *Willes,* 11 Hun, 16; *Isham* v. *Davidson,* 52 N. Y. 237; *Jordon* v. *Nat. Shoe & Leather Bk.,* 74 id. 467.)

RAPALLO, J. The most important points in this case are those which arise upon the rulings of the judge at the trial, that the defendants were liable for the damages caused by the flooding on the 27th of July, 1873, and that they were also liable for the damage on the 29th of August, if it arose from the same cause as that in July, and his refusal to submit to the jury any questions as to the liability of the defendants, except those relating to the amount of damages.

As the complaint was originally framed, the injury was alleged to have been caused by the excavation by the defend-

ants of their own lot for the purpose of laying the foundation and constructing the cellar of a building they were about constructing, and negligently and wrongfully permitting large quantities of water to collect upon the excavated part of their own premises, adjoining the store of Weeks & Co., and to remain there until they penetrated through the ground, into, and upon, the premises of Weeks & Co., and flooded the same, and damaged the goods in their basement.

Before the trial, the plaintiffs, by leave of the court, amended their complaint by inserting an averment that the defendants did also, wrongfully and negligently, interrupt the flow of water, which, in times of rain and storm, passed in the gutter and street fronting the premises occupied by said firm of Weeks & Co., and the premises of the defendants, and divert it therefrom, so that it flowed upon, and into, the premises occupied by said firm, and into their vault, etc., and into their sub-cellar, where were stored large quantities of merchandise.

The evidence upon the trial showed that, in July, 1873, the firm of Weeks & Co. (the plaintiff's assignors) occupied a store fronting on the northerly side of Duane street, in the city of New York. The store had a cellar, and also a sub-cellar, under the main building, and also a vault under the sidewalk, in front, but the floor of the vault was level with that of the cellar, and its walls and foundations were not as deep as those of the sub-cellar. The defendants were engaged in erecting a large building on the westerly side of the store, and had excavated and laid foundations for that purpose to the same depth as those of the sub-cellar of the store, and had extended their vault under the sidewalk to the same depth. In so doing, they had taken up the sidewalk, and the curb and gutter, and excavated a space in the street, extending about two feet outside the line of the curb, but the excavation in front of this wall had not been filled in, and there was thus left an open space in the street of eighteen inches, or two feet, in width, along, and in front of, the front wall of the defendant's vault. There was, also, a space of some inches on Weeks & Co.'s lot, between the easterly wall of defendants' building and vault, and

the westerly wall of the store and vault of Weeks & Co., it appearing that in building the store the builder had omitted to cover the entire lot; and, also, that the westerly wall was out of plumb, and inclined toward the east. This open space communicated with the excavation in the street in front of the wall of defendants' vault. The defendants had excavated this space between the lots, close up to the wall of the vault of Weeks & Co. Water falling into the excavation which the defendants had made in the street would naturally find its way into the space between the walls. The grade of Duane street descended from east to west, so that when the premises were in their ordinary condition, surface water flowed westwardly through the gutter in front of the store of Weeks & Co., and passed off through the gutter in front of defendants' lots, but the removal of the curb and gutter in front of defendants' lots would naturally throw the surface water into the excavation made by the defendants, to their injury, as well as to that of Weeks & Co.; and to prevent this, the defendants had constructed a dam, extending from the sidewalk, in front of the store of Weeks & Co., near the excavation, to the centre of the street, the effect of which was to turn the water across the street and let it flow through the gutter on the opposite side.

On the night of the 27th of July, 1873, during a heavy rain, the dam broke away, or was in some manner injured, so that it let the water into the excavation which the defendants had made in the street in front of the front wall of their vault. Thence it found its way under the foundation of the vault of Weeks & Co. (which was not as deep as that of the defendants), forced up the floor, and got into their area and sub-cellar, where the principal damage was done.

It was claimed by the defendants that the water got into the premises of Weeks & Co. from the space between the buildings, through holes or openings, which had been left in the westerly wall of the cellar; and also, that it came from the sidewalk. Some of the water may have come in through these holes, but we think that, taking the evidence on both sides, it is incontestable that the causes of the injury were the

removal of the curb and gutter, and the excavation in the street outside of the curb-line and of the front wall of defendants' vault, and that, on the breaking away of the dam, the water poured from the street gutter into that excavation, and into the small vacant space on Weeks & Co.'s lot, which lay between the side walls of the two vaults and buildings, and by that means got into Weeks & Co.'s vault and cellar. The theory that the damage was caused by the excavation made by the defendants on their own premises is not sustained by the evidence.

The defendants gave evidence to show that the dam was built properly, and that due care had been taken on their part to protect the premises. It was, however, conceded on their part, and proved by their own architect, who was a witness on their part, that when they commenced the erection, the street was paved and the sidewalk laid, guttered and curbed, and that they took up the gutter and curb to build the vault. That the front vault wall was built on a batter, and at the foundation extended a few inches outside the curb-line, but that the incline brought it to a line at the curb, and it appeared that the excavation outside the curb-line had been left open for the purpose of allowing the wall to dry and harden.

The general rule is well established that an unauthorized interference with, or excavation in a highway, or a street of a city for the private benefit of adjoining premises, is wrongful, and the party responsible for it is liable to all persons injured thereby, irrespective of any question of negligence. (*Irvine* v. *Wood*, 51 N. Y. 224 ; 10 Am. Rep. 603 ; *Creed* v. *Hartmann*, 29 N. Y. 591 ; *Dygert* v. *Schenck*, 23 Wend. 446 ; *Congreve* v. *Morgan*, 18 N. Y. 84.) It is said in some of these cases that where an excavation in a street is made by consent of the municipal authorities, it is not *per se* unlawful and a nuisance, and that the person making it is not absolutely liable to persons suffering injury by reason thereof, but only for want of proper care to avoid such injury, and the defendants in this case, for the purpose of showing such consent, put in evidence, under objection, a permit of which the following is a copy :

"No. 602.      Office of the Department of Public Works.

'Permission is hereby given to Manhattan Real Estate Association to construct a vault in front of premises known as north side of Duane street, commencing at north-east corner of Church street, and running east two hundred and thirty-four feet, used as business. Said vault to be fifteen feet in width and two hundred and thirty-four feet in length, outside measurement, and to occupy thirty-five hundred and ten square feet, upon condition that the person or persons to whom this permit is granted will in all respects comply with the corporation ordinances relative to ' vaults, cisterns and areas,' and that in no case shall this permit be construed as authorizing the extension of said vault beyond the line of the curb-stone or sidewalk. It is distinctly understood that this permit gives no authority, and it is strictly forbidden to disturb, by excavation or otherwise, any water hydrant or stop-cock chamber, or do any thing to prevent the proper use of any hydrant or stop-cock, or expose them to freezing.

Received from Jarvis Slade the sum of $2,632.50 in payment for the above permit, at the rate of seventy-five cents per superficial foot.

Keep this on the work.

GEO. M. VAN NORT,
*Commissioner of Public Works.*

Wm. Lockwood,
      *Water Purveyor.*"

This permit was not set up in the defendants' answer, nor was there any proof of the corporation ordinances regulating such permits, nor of the authority of the persons by whom it purports to have been signed, to grant it, but when offered in evidence it was not objected to on these grounds, but generally, no ground of objection being specified. It appears on its face, however, that it was granted on conditions which are not shown, and also upon the express condition that the vault should not extend beyond the line of the curb-stone or sidewalk.

It is very doubtful whether this permit authorized the excavation beyond the line of the curb, and the removal of the curb

and gutter, which were the causes of the damage. That question would be a serious one if this case were of the same description as those to which we have referred, and in which it is said that the consent of the municipal authorities renders lawful an excavation in a street, and relieves the party making it from the charge of creating a nuisance, and for liability for injuries to third persons, if proper care is used to prevent it. Those were cases of persons injured while traveling on the street or highway. As to the traveling public it may be that the municipal authorities can license acts in reference to the streets, which they might lawfully perform themselves, and that a person acting under such a license is not chargeable with creating a nuisance, or unlawfully obstructing or injuring the public highway, if he exercises due care. But a different question arises where the wrong complained of consists in doing damage to neighboring property by collecting surface water, or diverting it from its accustomed channel without providing another, and thus throwing it upon the land of an adjacent owner.

The rights of the parties in such a case do not depend upon the same principles as in cases where the wrong complained of consists of an interference with a public highway to the injury of the traveling public, but upon the principle of *Hay* v. *Cohoes Co.* (2 N. Y. 159), *St. Peter* v. *Denison* (58 id. 416; 17 Am. Rep. 258), *Jutte* v. *Hughes* (67 N. Y. 267), in which it is held that where one is making improvements on his own premises, or without lawful right, trespasses upon or injures his neighbor's property by casting material thereon, he is liable absolutely for the damage, irrespective of any question of care or negligence. A license from the municipal authorities cannot affect the question of responsibility in such cases. A municipal corporation has itself been held liable for throwing water collected in the gutter of a street, upon the land of a private owner (*Byrnes* v. *City of Cohoes*, 67 N. Y. 204), and in *Jutte* v. *Hughes* (id. 267), where a private owner paved his yard, thus rendering it less penetrable by water, and conducted water in leaders from the roofs of his houses to his yard in a quantity beyond the

capacity of the drains to carry away, and thus flowed the premises of his neighbor; it was held that he was absolutely bound to prevent the water which accumulated on his own premises from causing injury to his neighbor's, and that it was error to submit to the jury whether he had done every thing that was possible under the circumstances, and practicable in the way of drainage to carry off the water.

A municipal corporation may, in many cases, in the exercise of powers legally granted to it for public purposes, do acts with reference to the public streets which may result in consequential injuries to the property of adjacent owners, and be exempt from liability except for negligence, but it cannot delegate power to private individuals, to be exercised for their own private benefit, to do injury to the property of their neighbors, and relieve them from responsibility for the damages they may occasion, or reduce their liability to such as may result from want of care. At all events no such power has been shown to exist in the present case.

We are for these reasons of opinion that the permit given in evidence did not protect the defendants from absolute liability for the damages caused by the flooding of July 27, and that the judge properly declined to submit to the jury the question of negligence.

A point is made with reference to the charge that the defendants were also liable for the damage caused by the flooding of August 29, if it came from the same cause as that of July 27. The claim is that the complaint was not amended as to the flooding of August 29, and that the original allegations do not cover the facts which were proved with reference to the flooding of July 27. We do not think this objection available now, as it was not taken at the trial. The evidence as to both floodings was received without objection and nothing was said at the time with reference to the pleadings differing as to the two cases.

There is nothing in the case to raise the question, but a general exception to the portion of the charge last referred to.

The defendants also contend that if the injury arose from

the failure of the proprietor of Weeks & Co.'s stone to finish out the sidewalk and curb and gutter, so as to carry the water beyond the line of his lot, and the water thus got into the vacant space between the two buildings, the defendants are not liable, and that this question should have been submitted to the jury. We do not see how any such question is presented. The evidence is that the street was paved, and sidewalk and curb and gutter laid in front of all the premises in question. There was no uncovered space between the lots of the parties until the defendants took up the sidewalk, curb and gutter, and if such a space was then created, the defendants must themselves have created it, and must have taken up part of the curb and gutter in front of the lot of Weeks & Co.

If there was no such space, the injury must have resulted from the water collected in the gutter being thrown into the excavation in the street in front of defendants' lot, outside of the curb and gutter line. In either case the injury was produced by the unlawful act of the defendants. The presumption is that the curb, and gutter, and pavement were laid by the municipal authorities, and there is no evidence that they were not continuous until the defendants took them up.

We do not regard, as material, the question whether any of the water which got into the store of Weeks & Co. came through the holes in the side wall. They were under no obligation to make the wall impervious to water which might be wrongfully thrown upon their premises. (*St. Peter* v. *Denison*, 58 N. Y. 416; 17 Am. Rep. 258.)

We find no exception to the rulings of the court on the question of damages, which entitles the defendant to a new trial. The allowance of interest is sustained by the cases of *Walrath* v. *Redfield* (18 N. Y. 457), and *Parrott* v. *Knickerbocker and N. Y. Ice Cos.* (46 id. 361). The trial-judge, in conformity with those cases, submitted to the jury the question whether the allowance of interest was necessary to give the plaintiffs compensation. The alleged errors of the jury, in respect to the amount of damages, cannot be corrected here.

There was no error in denying the defendants' motion to

reduce the verdict and judgment by the amount of the counter-claim set up in the answer. No point was made at the trial in respect to this counter-claim, and consequently there is no exception to its disallowance. When the motion to reduce the verdict was subsequently made, the court was justified in taking into consideration the legal objections to the allowance of this counter-claim. These were two-fold. First, the action was for a tort, and the counter-claim was on contract; and, second, the action was upon a demand in favor of Weeks, Linsley & Shephard, and assigned by them to F. S. Weeks and George S. Weeks, and which subsequently passed to their assignee in bankruptcy, and the counter-claim was for rent of premises other than those on which the damage was done, accruing under a lease to F. S. Weeks alone. (*Jordan* v. *Natl. Shoe and Leather Bank*, 74 N. Y. 467; 30 Am. Rep. 319.)

The judgment should be affirmed.

All concur, except MILLER, J., absent.

Judgment affirmed.