### MILLER *et al. v.* NEW YORK, L. & W. RY. Co.

*(Superior Court of Buffalo, General Term.*  December 31, 1888.)

1. RAILROAD COMPANIES—CONSTRUCTION—REPAIRS.

A railroad lease provided that the lessor would issue its bonds or stock for the payment of all work which the lessee might desire to have done, "the cost of which is chargeable to construction account."  When the lease was made, there was a trestle at one point of the road, which the lessee subsequently filled with an embankment, and the lessor issued its bonds for the cost thereof.  *Held,* that such filling was not in the nature of repairs by the lessee, but was the construction of a portion of the lessor's road.

2. SAME—LEASE—CHANGE OF CONSTRUCTION—LIABILITY OF LESSOR.

For damages to adjoining land, resulting from the nature of the embankment, and not from lack of care by the lessee in its construction, the lessor is liable.

Appeal from trial term.

Action by Peter Miller and Barbara Miller to recover damages to real prop-
erty. Upon the trial it appeared that the defendant was a corporation duly
created under and by virtue of the laws of the state of New York for the pur-
pose of constructing and operating a railway from the city of Binghamton,
N. Y., to the international bridge in the county of Erie, N. Y. The defend-
ant's premises adjoin those of plaintiffs on the easterly and northerly sides
thereof. Previous to October, 1882, defendant had constructed its road, and
laid its tracks upon trestles, about 20 feet above grade on its land adjoining
plaintiffs' premises. In October, 1882, defendant executed and delivered to
the Delaware, Lackawanna & Western Railroad Company, a corporation ex-
isting under and created by the laws of the state of Pennsylvania, an indent-
ure of lease of its said railway, for and during the full term of its corporate
existence, and thereupon the said last-named corporation entered upon and
took possession of the said railway, its appurtenances and appliances, and has
since continued to operate the same. In 1883, 1884, and 1885, the lessee
caused the said trestle to be filled with clay and earth, making an embank-
ment 20 feet high upon its land, adjacent to and along the whole width of the
plaintiffs' premises. In seasons of rainy weather, since said filling, clay and
earth have washed down from said embankment to and upon plaintiffs' prem-
ises, rendering them unfit for the purposes used, and occasioning the damage
here complained of. In the construction of the embankment it was practi-
cable to have prevented this washing, by the construction of a ditch or retain-
ing wall upon the defendant's premises. The defendant, in payment of the
cost of constructing such embankment, issued and delivered to its lessee its
bonds for the amount thereof, the said filling being done by and under direc-
tion of the officers of the lessee. Judgment for plaintiffs, and defendant ap-
peals.

*John G. Milburn*, for appellant. *Seward A. Simons*, for respondents.

HATCH, J., (*after stating the facts as above.*) By the terms and condi-
tions of the lease, executed by these corporations, it was, among other things,
provided that the defendant should maintain its corporate existence, and per-
form all acts and things thereunto necessary, and that it would from time to
time, upon request of the lessee, make, execute, issue, and deliver its bonds
and stock for the construction of locomotives, machinery, and equipments for
said railroad, and for the construction of any extensions or branches, or any
other railroads, which the lessor in the exercise of its rights possessed the
power of doing, and for all other things, work, or works, which the lessee
may desire to have done in the exercise of said rights, the cost of which is
properly chargeable to construction account. It is under this article of the
lease that the lessee exacted, and the lessor executed and delivered, its bonds
in payment for the cost of constructing the embankment. It is, however,
claimed by defendant that such embankment was no part of the original
structure of defendant's road; that it fully completed its chartered duty to
construct when its road was in operation upon the trestle, from which no
damage was sustained by plaintiffs; and that the filling of the trestle was
the act of the lessee in the nature of a repair over which defendant exercised
no control. It may be conceded that when the lease was executed, the road
was in operation, and the public duties of defendant discharged sufficiently
to support the lease executed by it. It was, of course, possible to continue
the operation of the road upon the trestle, but it is common knowledge that
such structures are usually temporary where the nature of the ground ren-
ders an embankment practicable. We think that a fair construction of the
lease and the acts of the parties show that the trestle was regarded as a tem-
porary structure only, to be thereafter filled, making a permanent road-bed of
earth. The lease in terms provides, in the clause relating to the construction
of other roads or branches, that the lessor, when called upon, will issue its

bonds or stock for the payment of all work or works which the lessee may desire to have done, the cost of which is chargeable to construction account. Under that article the work in question was performed, and the lessor, in recognition thereof, paid the cost therefor in the manner provided. When constructed, it became a permanent part of defendant's road, in like manner as any other portion. Such construction was not in the nature of a repair, as it supplanted the trestle, making the permanent and final support for the ties and rails. Such being the character of the structure provided for by defendant, it became and is its property and improvement, and for all damages resulting therefrom it is liable. *Mairs* v. *Association*, 89 N. Y. 498, 505. It is insisted by defendant that the damage claimed here did not arise from the embankment as a structure, but from the manner in which the work was performed, for which the lessee alone is liable. It is undoubtedly true that the defendant has authority under its charter to contract for the construction of any or all portions of its road, and not be liable for damages incurred as the result of negligence on the part of the contractor in the manner of the performance of the work. *Hexamer* v. *Webb*, 101 N. Y. 377, 4 N. E. Rep. 755; *King* v. *Railroad Co.*, 66 N. Y. 181. In the present case the lessee performed the work under the direction of its own officers, the lessor being interested therein only as to the result of the work, and not in the manner of its execution, or the means by which it was accomplished. The lessee, therefore, occupied the relation of an independent contractor, for whose negligence the lessor is not liable. The question, therefore, presents itself, Is the damage here complained of the result of negligence in the manner of the performance of the work, or does it arise from the structure itself, without reference to skill and care in its construction? If the former, the lessee is alone liable; if the latter, the lessor. *Storrs* v. *City of Utica*, 17 N. Y. 104; *Harrison* v. *Collins*, 86 Pa. St. 153; *Lockwood* v. *Mayor*, 2 Hilt. 66. So far as the case discloses, the embankment was constructed in the ordinary manner, and by the ordinary means usually employed. The damage arose by the washing down of earth upon plaintiffs' premises in rainy seasons. It is evident that an embankment of this character will have sloping sides, being wide at the base and narrow at the top; and the result of such construction is that water will shed from it, and carry silt and earth in greater or less quantities, depending upon the volume of water, and the character of the soil. Such result does not follow from lack of care in the manner of construction, but from the nature of the structure. It is suggested that this might have been avoided by building a retaining wall, or digging a ditch, but there is nothing in the case to show that such was the plan of construction. It is quite apparent that embankments may be built in various ways, by retaining all the earth between walls, or by a ditch to carry off all the water shed, or by filling in the earth to the required height without either. Such suggestions, therefore, relate rather to the plan of construction than to the manner of performing the work. Here we find an embankment constructed from which, from its inherent character, damage results. There is no evidence to show that the lessee did other or different than to construct an embankment of the character contemplated by the parties. To say otherwise would be to presume the lessee guilty of negligence; but presumptions of negligence only arise upon proof, (*Curtis* v. *Railroad Co.*, 18 N. Y. 543; *Cordell* v. *Railroad Co.*, 75 N. Y. 330,) and here there is none. On the other hand, the defendant has acquiesced in the manner of construction, accepted, paid for it, and is now receiving the benefits under it. We think that these facts warrant the presumption that the embankment constructed was such as the defendant contracted for, and, damage from it having resulted, the defendant is liable. The judgment and order appealed from is therefore affirmed, with costs.

BECKWITH, C. J., did not sit. TITUS, J., concurs.