pany became, through consolidation, the owner of two lines of railroad between the same points, and abandoned one of them on the ground that parallel lines were unnecessary. The people, by their attorney general, prayed for a peremptory writ of mandamus to compel restoration. Earl, J., speaking for the court, said:

"As this writ was applied for by the attorney general on behalf of the people, it must be assumed that it was issued only to subserve a public interest and to protect a public right. If private interests only were involved, the application for the writ by the attorney general on behalf of the people was not proper. In that case it should have been applied for by the private parties interested, who should have been relators. In order, therefore, to maintain this writ, and to justify the action of the court in granting it, we must be able to see, from the undisputed facts alleged, that it was issued to protect some public right or to secure some public interest." People v. Rome, W. & O. R. Co., 103 N. Y. 104, 8 N. E. 369.

I think that the order in this case can be sustained upon the principle that there is a plain statutory duty cast upon this corporation, and that the right of the relator to the relief incident to its discharge is clear. In People v. Trustees St. Patrick's Cathedral, 21 Hun, 184, Barrett, J., at page 195, states the rule in terse language:

"Mandamus is appropriate where a public duty is imposed, or some act specifically directed, by statute."

Mr. Wood, in his work on Mandamus, at page 64, states:

"When a corporation fails to discharge its duties according to the requirements of its charter or the statutes of the state, it may be compelled to do so by mandamus, on the relation of any person having a special interest therein,"—and follows his rule with many instances.

See, also, Tapp. Mand. pp. *30, *31; Merrill, Mand. § 158 et seq.; 1 Redf. R. R. (6th Ed.) § 155; High, Extr. Rem. (3d Ed.) §§ 320, 326; Reg. v. Trustees, 1 Q. B. 860; Reg. v. York & N. M. R. Co., 3 Eng. R. R. Cas. 764, which latter case, though reversed in Railway Co. v. Milner, Id. 773, 776, did not disturb the rule laid down by Lord Denman, C. J.,—that a mandamus would issue. Lefurgy v. New York & N. R. Co. (Sup.) 3 N. Y. Supp. 302.

The learned counsel further contends that there is an adequate remedy by action. Undoubtedly there is another remedy, but that which is in law is not adequate, and that which is adequate is in equity. There is no adequate specific legal remedy which bars the relator.

The order appealed from must be affirmed, with $10 costs and disbursements. All concur.

---

TUCKER et al. v. MACK PAV. CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

INJUNCTIONS—NUISANCE—BLASTING—INJURY TO ADJOINING PROPERTY.

A paving company, which, having to do blasting on its own property in order to fit the same for the erection of stone crushers and to obtain the rock used in its business, exercises due care in doing it, will not be restrained in such use of its property because of injury to adjoining property arising merely from the incidental jarring.

Appeal from special term, Rockland county.

Action by Arthur C. Tucker and another against the Mack Paving Company of New York to restrain the quarrying, crushing, and screening of rock. From a judgment in favor of the plaintiffs, defendant appeals. Reversed.

The judgment entered was one restraining the defendant, a domestic corporation, from continuing or permitting to be continued upon the premises described in the complaint such blasting of rock as has been done upon said premises since it acquired possession, and perpetually enjoining and restraining the defendant and its officers, agents, servants, and representatives from so operating and carrying on the business of quarrying, crushing, and screening of trap rock, and from permitting the same to be done in such a manner as to cause fragments of rocks, stone, or dust to be carried to, over, and upon said premises, or into any of the buildings upon said premises, or any injury to plaintiffs' premises by shock or jar, and from causing or permitting any fragment of stone or rock to be thrown upon plaintiffs' premises from its said premises, or any dust from its said premises or quarry, crushings, or screens to be carried upon, over, or into plaintiffs' said premises, or from carrying or permitting to be any injury by shock or jar to plaintiffs' said premises.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

De Lancey Nicoll, for appellant.

A. S. Tompkins, for respondents.

SEWELL, J. The defendant, a domestic corporation, is the owner and in possession of about 50 acres of land extending along the western bank of the Hudson river 1,600 feet, and back to the top of the mountain. The property was purchased in February, 1899, for the purpose of quarrying and selling the trap rock which forms the principal part of the mountain. For several weeks prior to the commencement of this action the defendant was engaged in blasting rocks, cutting down trees, making roads, and preparing for the opening of a trap-rock quarry and the erection of crushers. The plaintiff Tucker is, and for the past 15 years has been, the owner of about 20 acres of land, the northern line of which is 350 feet from the southern line of the defendant's property. Upon these premises is a large and expensive residence, greenhouses, and conservatories, surrounded by grounds beautified by shade trees, shrubbery, and flowers. The plaintiff McQuade is the owner of 50 acres of land located between plaintiff Tucker's premises and the land of the defendant. Upon this tract is a large and attractive residence, surrounded by beautiful and extensive grounds planted with ornamental trees, flowers, and vines. The complaint alleges that the defendant, by its agents and servants, in preparing its premises for the erection of crushers and the opening of the quarry, has discharged comparatively small quantities of dynamite, and made comparatively light blasts, the effect of which has been to jar the dwelling houses upon the plaintiffs' premises, to shake the glass therein, and to throw fragments of rock close to the premises in which plaintiff McQuade has an interest; that, as plaintiffs are informed and believe, the defendant intends, after said quarry is open, to make larger blasts, and use greater quantities of dynamite or powder

70 N.Y.S.—44

therefor, and, unless the defendant is restrained and enjoined from carrying on said proposed business upon said premises, it and its agents and servants will within a few weeks begin the blasting and crushing of rock; that the noise from the blasts and crushers will greatly disturb and annoy the plaintiffs and the members of their respective families; that the dust, dirt, and smoke from the blasts, furnaces, and crushers will be carried upon the plaintiffs' lands, and into their buildings; that the shock of the blasts, and the stone and rocks thrown upon their premises, will injure the buildings; that the use and enjoyment of the said premises will be prevented and destroyed, and that the plaintiffs will suffer great and irreparable injury and damage. The plaintiff Tucker testified that:

"Several of the blasts shook the house so that the windows would rattle,— a very perceptible shock to the house. That occurred several times. * * * I was in the house at the time, and the shock was perceptibly felt by me. * * * The effect of those blasts and the noise has been very annoying to me, and the reports from them have been very distinctly heard upon my premises."

Two other witnesses testified that the blasts were loud, and made the windows rattle; and one of them added that they shook her house, and cracked the walls of her parlor.

It is an elementary principle of law that every person has the legal right to occupy, enjoy, and use his own property in the way and manner that shall best subserve his private interest. This general right is, however, not absolute, but is limited, qualified, and restrained by the co-existence of equal rights in his neighbors and other members of the community to the use of their property; so that each, in exercising his rights, must do no act which causes injury to any legal right of another. This does not forbid all use by one of his property which annoys or disturbs his neighbor in the enjoyment of his property. The development of industries and manufacturies is a matter of concern to the public, in the furtherance of which the individual must put up with a reasonable degree of inconvenience inseparable from their prosecution. Authorities are numerous sustaining the proposition that the rights of each person living in society are liable to be modified and abridged by the exercise by others of their own rights, and, so far as they are thus abridged, the loss is damnum absque injuria. Lord Justice James, speaking of the use of land, said, in Salvin v. Coal Co., 9 Ch. App. 705:

"If some picturesque haven opens its arms to invite the commerce of the world, it is not for this court to forbid the embrace, although the fruit of it should be the sights and sounds and smells of a common seaport and ship-building town, which would drive the Dryads and their masters from their ancient solitude."

A man may do many things on his own land which may result in injury to the property of others, without being answerable for the consequences. If he acts with proper care and skill, he may set fire to his fallow grounds, and, though the fire run into and destroy the woodland of his neighbor, no action will lie. Clark v. Foot, 8 Johns. 421; Cosulich v. Oil Co., 122 N. Y. 118, 25 N. E. 259,

19 Am. St. Rep. 475. He may open and work a coal mine in his own land, though it injures the house which another has built at the extremity of his land (Patridge v. Scott, 3 Mees. & W. 220), and he may do the same thing though it cut off an underground stream of water which before supplied his neighbor's well, and leave the well dry (Acton v. Blundell, 12 Mees. & W. 324). He may build on his own land, though it stops the lights of his neighbor. Mahan v. Brown, 13 Wend. 261, 28 Am. Dec. 461; Parker v. Foote, 19 Wend. 309. He may dig a pit on his own land, be it never so deep, though the house of his neighbor be undermined thereby, and fall into the pit (Panton v. Holland, 17 Johns. 92, 8 Am. Dec. 369); and he may erect a dam on his own land, by which he withholds the water from a mill below, to the injury of its owner (Palmer v. Mulligan, 3 Caines, 308, 2 Am. Dec. 270). In each of these cases the plaintiff was restricted in some particular mode of enjoying his property by the exercise of a right of domain on the part of the defendant. There was damage, but no wrong, because what was done by the adjacent owner was in the lawful and permitted use of his property. The test of the permissible use of one's own land is not whether the use or the act causes injury to a neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance, but the inquiry is, was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over the property, having regard to all interests affected. Booth v. Railroad Co., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552. An action on the case for a nuisance does not lie for a reasonable use of any right, although it be to the annoyance of another. Comyns' Dig. 215. To determine what is a reasonable manner of occupation, enjoyment, and use of property, it is necessary to consider its location, peculiarities, the nature and character of the business to be carried on, the exercise of reasonable care and diligence, and the existence of any condition beyond the control of the owner. A use of property in one locality, and under some circumstances, may be lawful and reasonable, which, under other circumstances, would be unlawful, unreasonable, and a nuisance. Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567. In an action for an injunction it is also necessary to consider the degree of the injury complained of. The annoyance and the disturbance of comfort and the enjoyment of property must be substantial and real, especially so when there has been no invasion of property, and it is sought to restrain a useful and necessary business. It appears from the evidence that the defendant's property in its natural condition is practically valueless, and the sole use which can be made of it is to convert the trap rock into a marketable form, when it is a valuable adjunct in road and street construction. The plaintiffs do not impute to the defendant any want of care or skill in doing the work, or deny its right to use the property for the purposes intended. The objection is not to the thing done, but to the mode of doing it. Blasting—the most objectionable of all the steps necessary to prepare the rock for market—cannot be done except where the trap rock is naturally

found.   It is not claimed that there is any other available mode of obtaining the rock, or that the property of the plaintiffs has been physically or materially injured.   This case does not fall within the rule recognized and applied in Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567, where the nuisance complained of was a brick kiln, which, without great difficulty, could be removed a sufficient distance from plaintiff's dwelling to abate the noxious gases complained of.   Neither is it analogous to Hay v. Cohoes Co., 2 N. Y. 159, 51 Am. Dec. 279, where there was physical invasion by the defendant of the land of the plaintiff; or to Pach v. Geoffroy, 67 Hun, 401, 22 N. Y. Supp. 275, where the referee found that the injury could be abated by changing the situation of the dynamos, and by removing certain belting and pulleys; and the court said:

> "While, therefore, the courts are always loath to interfere with the manner of conducting a lawful business, yet, when it can be shown that the manner of conducting it results in injury to another, and that such injury could be prevented by changing the mode or manner of conducting such business, the court will be disposed to require that the cause of such injury be removed."

These cases, and others of this class, have no application to the one at bar.   The injury complained of in them did not arise from operations having any relation to the locality or the nature of the land.   They were decided upon the special facts appearing upon the trial, and are no authority in a case where the same conditions do not exist.   The case of Booth v. Railroad Co., supra, is closely in point with this.   In both cases there was no technical trespass, and the injury was caused by the use of explosives, which was the only method of removing the rock practically available.   In both cases the defendants were engaged in necessary work, and the blasting could not be done elsewhere.   Both of the defendants were free from fault or negligence in doing their work, and the injury in each case was unavoidable, and occasioned by the acts of the defendants in blasting on their own premises in order to fit them for a lawful business.   Judge Andrews there said:

> "Under these circumstances we think the plaintiff has no legal ground of complaint.   The protection of property is doubtless one of the great reasons for government.   But it is equal protection to all which the law seeks to secure.   The rule governing the rights of adjacent landowners in the use of their property seeks an adjustment of conflicting interests through a reconciliation by compromise, each surrendering something of his absolute freedom, so that both may live.   To exclude the defendant from blasting to adapt its lot to the contemplated uses, at the instance of the plaintiff, would not be a compromise between conflicting rights, but an extinguishment of the right of the one for the benefit of the other.   This sacrifice, we think, the law does not exact."

The law upon this subject is also laid down in the case of Marvin v. Mining Co., 55 N. Y. 538, 14 Am. Rep. 322, where the court said:

> "Whatever it is necessary for him [defendant] to do for the profitable and beneficial enjoyment of his own possession, and which he may do with no ill effect to the adjacent surface in its natural state, that he may do, though it harm erections lately put thereon."

The same principle was decided in Hurdman v. Railway Co., 3 C. P. Div. 168, where the court said:

"The owner of land holds his right to the enjoyment thereof subject to such annoyance as is the consequence of what is called the natural use by his neighbor of his own property; and, where an interference with his enjoyment by something in the nature of a nuisance is the cause of complaint, no action can be sustained, if the result of the natural use by a neighbor of his own land."

In Rylands v. Fletcher, as reported in L. R. 3 H. L. 330, the proposition is thus stated:

"When the owner of lands, without willfulness or negligence, uses his land in the ordinary manner of its use, though mischief should thereby be occasioned to his neighbor, he will not be liable for damages."

From these cases, and from many others which might be cited, it appears to be well established that the owner of land is entitled to the ordinary and natural use and enjoyment of his property, and that he should not be prevented from doing what is necessary to improve or to adapt his property to a lawful use. A rule that would enable the first occupant to control the use of adjoining property would prevent the development of the natural resources of the country, the improvement of property, and the prosecution of a lawful trade or business. Certainly is this so where, as in this case, the defendant can make no other use of its property.

There can be no question with respect to the natural use of mining property. "It is established," says Colton, P. J., in Steel Co. v. Kinyon, 11 Ch. Div. 782, "that taking out mineral is a natural use of mining property, and that no adjoining proprietor can complain of the result of careful, proper, mining operations." The right to mine is an incident to the ownership of mining property, and I can find no adjudicated case where it has been held, or ever suggested, that the owner of a mine has not a natural right to work his mine, or is accountable for consequences which he cannot control, so long as his operations are carried on with due care, and in a reasonable and proper manner, and do not amount to an invasion of the plaintiff's property. According to this doctrine, which applies with equal force to the operations of a trap-rock quarry, the defendant has the lawful right to blast and prepare its trap rock for the use to which it is peculiarly fitted. And, if it were otherwise, the fact that the plaintiffs' dwelling houses as dwellings have been or may be affected to some degree by the temporary acts of the defendant is not sufficient to warrant the destruction of the defendant's business, or for preventing it from blasting on its own land to fit it for the uses intended. There is a manifest distinction between acts and uses which are permanent and continuous and temporary acts, which are resorted to in the course of adapting premises to some lawful use. Booth v. Railroad Co., supra. The evidence as to the nature and effect of the blasts does not show that the noise was "unusual, ill-timed, or deafening," or that the vibrations produced any direct or material injury to the plaintiffs' property. Neither is it clear that these effects will be permanent and continuous, or that the defendant will not be able to operate its works in such a manner that the plaintiffs will suffer none of the injuries or inconveniences anticipated. It seems to us, therefore,

that the present is not a case in which an injunction should issue, and that the defendant should be permitted to go on with the preliminary work, at the risk of not being allowed to operate its works or carry on its business if such operation should prove a nuisance, or of being obliged to make good any damage which may ensue.

We are therefore of the opinion that the judgment should be reversed, with costs. All concur.