in 1905. The only issues presented for trial were those tendered by Minnie A. Jacquelin attacking the validity of the assignment.

The appeal comes to us upon the pleadings, the decision, and the judgment; there being no case on appeal and none of the evidence. There is also printed in the appeal book a document, consisting of some 30 requests to find, submitted by the defendant Walton, of which a few are marked "Found," and the majority are marked "Not found." None of these can be considered, because these requests marked "Found" have not been incorporated into the signed decision, and the exceptions to the refusal to find the others raise no question in the absence of the testimony. The decision merely finds the facts relating to the existence of the fund; that it is claimed by Henri L. Jacquelin, Minnie A. Jacquelin, and J. Charles Walton; and that Minnie A. Jacquelin is a judgment creditor of Henri L. Jacquelin by virtue of a judgment, no part of which has been paid, and upon which execution has been issued and returned unsatisfied. The conclusion of law based upon these findings is that Minnie A. Jacquelin is entitled to receive and have paid to her the amount of the fund, free from any claims or demand of Henri L. Jacquelin or J. Charles Walton, and that neither said Jacquelin nor said Walton have any claims on or title to the fund or any part thereof, and judgment is awarded, and was entered accordingly.

The question is whether this conclusion of law is sustained by the admitted facts and the findings of fact. It is apparent that it is not. One of the admitted facts, which required no evidence to support it, and no finding to establish it, was that Henri L. Jacquelin had assigned the fund to J. Charles Walton long before Minnie A. Jacquelin recovered her judgment. Upon the only issues raised by the pleadings, to wit, the validity of the assignment as against Minnie A. Jacquelin, there is no finding at all, and there is therefore nothing on the record to impeach its validity. It follows that the conclusions of law and the judgment are contrary to the established and uncontradicted facts.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

GORDON v. ELLENVILLE & K. R. CO.

(Supreme Court, Appellate Division, Third Department. May 24, 1907.)

1. WATERS AND WATER COURSES—INJURIES FROM FLOWAGE.

A railroad, in constructing its roadway within the limits of its right of way along a canal owned by the road, tore down a towpath and used the material to construct an embankment for the road. The embankment narrowed the bed of the canal a short distance from where a stream discharged into it, and provision was made for the waters of the stream by closing the canal, so as to cause the water to flow along the newly constructed embankment to a culvert. A rainfall and freshet occurred, and the embankment gave way, whereby plaintiff's lands were flooded. *Held,* that the railroad was not liable for the damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Waters and Water Courses, § 42.]

2. TRESPASS—ISSUES AND PROOF.
    One cannot declare on a cause of action for a trespass and a direct injury from the wrongful act, and recover for negligence.
    Kellogg, J., dissenting.

Appeal from Ulster County Court.

Action by Harry S. Gordon against the Ellenville & Kingston Railroad Company. Plaintiff appeals from a judgment dismissing the complaint. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

John R. De Vany, for appellant.
John J. Linson, for respondent.

SEWELL, J. This action was brought in Justice's Court to recover damages for an alleged trespass. It was alleged in the complaint that the defendant wrongfully and unlawfully diverted and changed the course of a stream of water, and turned the same on and over plaintiff's land, to his damage in the sum of $200. The answer of the defendant put in issue these allegations. The defendant did not defend in Justice's Court, and the plaintiff recovered a judgment. The defendant appealed for a new trial in the County Court, where a nonsuit was granted.

It appeared by the evidence that the defendant was constructing a railroad within the limits of a right of way it had purchased through plaintiff's farm, and along or near the Delaware & Hudson Canal, which it then owned.; that it tore down the towpath for a distance of 100 feet or more, and used the material to construct an embankment for the railroad; that the embankment filled up or narrowed the bed or trunk of the canal a short distance from where a small mountain stream discharged into it; that provision for the water of this stream was made by closing the canal east of the point of discharge, so as to cause the water to flow westerly along the newly constructed embankment for the road to a culvert, through which it flowed into the Rondout creek; that a very heavy rainfall and freshet occurred while the defendant was constructing the embankment; that it gave way, and the plaintiff's lands were flooded and damaged. It appeared that all the acts of the defendant were confined to its own lands, or within the limits where it had the right to work, and that the injury to the plaintiff's premises was the consequence following and traceable to the unfinished condition of the road embankment, or to its recent or defective construction.

It was assumed at the trial that the defendant was authorized to construct the road, and that the use of the canal made by the defendant was necessary and proper in the execution of the. work. It was not claimed that by such use the defendant had wrongfully diverted or discharged the water of the stream upon the plaintiff's premises, or that any act of the defendant was directly or immediately injurious to it. This is clearly a case of incidental or consequential injury, which resulted to the plaintiff from the exercise of a legal right on the part of the defendant, as were the cases of Radcliff's Ex'rs v. Mayor, 4

N. Y. 195, 53 Am. Dec. 357, Uline v. N. Y. C. & H. R. R. Co., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661, Atwater v. Trustees of Village of Canandaigua, 124 N. Y. 602, 27 N. E. 385, Booth v. R., W. & O. R. R. Co., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552, and Holland House Co. v. Baird, 169 N. Y. 136, 62 N. E. 149. It is distinguishable from Hay v. Cohoes, 2 N. Y. 159, 51 Am. Dec. 279, St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258, Noonan v. City of Albany, 79 N. Y. 470, 35 Am. Rep. 540, Cogswell v. N. Y. & N. H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701, McKee v. D. & H. C. Co., 125 N. Y. 353, 26 N. E. 305, 21 Am. St. Rep. 740, and Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274, where there was a physical invasion of the plaintiff's land, or the injury was done directly by the acts of the defendant. The distinction between direct and consequential injury to private lands, in the prosecution of public work performed under legislative authority, was fully considered and pointed out by Judge Werner in Huffmire v. City of Brooklyn, 162 N. Y. 584, 57 N. E. 176, 48 L. R. A. 421.

There are many decisions in this state to the effect that, where a railroad company is constructing its road under authority of law, it is not liable for mere consequential damages, and that the only ground of liability in such a case is either bad faith or want of due care or skill in the execution of the work. In Bellinger v. N. Y. C. & H. R. R. Co., 23 N. Y. 42, it was held that where one interferes with the current of a running stream, in pursuance of legislative authority granted for the purpose of constructing a work of public utility, he is only responsible for such injury as results from the want of proper care and skill. In Atwater v. Trustees, etc., Judge Bradley said:

"The doctrine, however, is well established in this state that public officers lawfully employed in making public improvements, and corporations engaged in the performance of work of a public nature authorized by law, are not liable for consequential damages occasioned by it to others, unless caused by misconduct, negligence, or unskillfulness"—citing Radcliff's Ex'rs v. Mayor, 4 N. Y. 195, 53 Am. Dec. 357; Bellinger v. N. Y. C. & H. R. R. Co., 23 N. Y. 42; Moyer v. N. Y. C. & H. R. R. Co., 88 N. Y. 351; Uline v. N. Y. C. & H. R. R. Co., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661.

While there is abundance of authority for this doctrine, there are decisions in which it is limited to cases where the statutory sanction is express, or given by clear and unequivocal implication from the powers expressly conferred, so that it can fairly be said that the Legislature contemplated the doing of the very act which occasioned the injury. Cogswell v. N. Y., N. H. & H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; Hill v. Mayor of New York, 139 N. Y. 495, 34 N. E. 1090; Booth v. R., W. & O. T. R. R. Co., 140 N. Y. 272, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552. It is unnecessary to consider whether, in doing the acts complained of, the defendant acted in the performance of a public duty or in the exercise of a right or power expressly conferred; for, if we assume that the liability of the defendant depends upon the same rule as would govern an individual, its acts were not a trespass for which the plaintiff has a right of action. The test of the permissible use of one's

own land is not whether the use or the act causes injury to a neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance; but the inquiry is, was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over the property, having regard to all interests affected? Tucker v. Mack Paving Company, 61 App. Div. 521, 70 N. Y. Supp. 688. In Booth v. R., W. & O. T. R. R. Co., the plaintiff's house was seriously injured by blasting. The foundations were cracked, the beams and joists pulled apart, and the plaster loosened. The court said:

"But mere proof that the house was damaged by the blasting would not alone sustain the action. It must further appear that the defendant, in using explosives, violated a duty owing by him to the plaintiff in respect of her property, or failed to exercise due care. Wrong and damage must concur to create a cause of action."

This doctrine was also fully sanctioned and applied in Holland House v. Baird, 169 N. Y. 136, 62 N. E. 149, where the plaintiff's vault was injured by a blast while the defendant was engaged in excavating a trench in the street in front of the plaintiff's building. Judge Gray in that case said:

"This was not a case of a technical trespass upon the property of another, where proof of negligence in the defendant is unnecessary (Hay v. Cohoes, 2 N. Y. 159, 51 Am. Dec. 279; St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258), but one of consequential injury, where proof of negligence in performance is essential to a cause of action for damages"—citing Benner v. A. D. Co., 134 N. Y. 156, 31 N. E. 328, 17 L. R. A. 220, 30 Am. St. Rep. 649; Booth v. R., W. & O. R. R. Co., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552.

In distinguishing that case from Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274, where the injury was direct, and not consequential, the judge said:

"The rule of law must therefore be considered as well settled in this court that negligence is essential to be proved in such a case as this of consequential injury, in order to create any liability in the defendant."

The defendant here was engaged in a lawful act. It was constructing its road upon its own land, and for all that appears, where public necessity required. It was not an act which was certain to produce injury to the plaintiff, and if the work was done with proper care and skill there was no nuisance. Under these circumstances I think it is entirely clear that the plaintiff failed upon the trial to establish by proof the cause of action alleged in the complaint, and that the trial judge did not err in refusing to submit the question of the defendant's negligence to the jury.

The complaint is not sufficient in form to comprehend a charge of negligence. There is no allegation that it was not necessary and proper to build the road when it did, or as it did; and there is no allegation that the work was unskillfully or improperly done. The plaintiff's counsel insisted that the cause of action set up in the complaint was for a direct trespass, and the case was tried without regard to any question of negligence or want of care. The authorities establish a distinction between an action for a wrong and an action for

104 N.Y.S.—45

negligence. Dickinson v. Mayor, 92 N. Y. 584. One cannot declare on a pure trespass and a direct injury from the wrongful act, and recover for negligence. Fisher v. Rankin, 27 N. Y. St. Rep. 582, 7 N. Y. Supp. 837; Caven v. City of Troy, 15 App. Div. 163, 44 N. Y. Supp. 244; Kipp v. N. Y. C. & H. R. R. Co., 89 App. Div. 392, 85 N. Y. Supp. 855; Wittman v. City of New York, 80 App. Div. 585, 80 N. Y. Supp. 1022.

While the Code is liberal in disregarding technical defects and omissions in pleadings, it does not permit a cause of action to be changed because the plaintiff fails to prove facts necessary to sustain it, or because he has mistaken his remedy and the force and effect of the allegations of his complaint. The rule that judgment should be rendered in conformity with the allegations and proofs of the parties, "secundum allegata et probata," is fundamental in the administration of justice. Wright v. Delafield, 25 N. Y. 266; Southwick v. First National Bank, 84 N. Y. 420. It was said with much force in Brightson v. Claflin Co., 180 N. Y. 81, 72 N. E. 920, that pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them. If a party can allege one cause of action and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary.

This is not a case of mere omission, but a case of failure to prove the cause of action alleged in the complaint, and to permit a recovery would be to allow the plaintiff to allege one cause of action and recover upon another. The effect would be, not only to change the action from one cause to another and different ground of action, but it would authorize a recovery upon evidence which disproves the cause of action alleged in the complaint.

Our conclusion, therefore, is that the judgment should be affirmed, with costs.

CHESTER and COCHRANE, JJ., concur.

SMITH, P. J. (concurring). I concur in the conclusion reached by Mr. Justice SEWELL, and in his opinion, and wish simply to add that the appellant cannot claim upon this appeal that negligence was shown because of the position taken by him upon the trial. There was apparently no claim upon his part that he had proven negligence. His position was that the defendant was liable without proof of negligence. This would appear at the close of the plaintiff's case, where the defendant moved for a nonsuit upon the ground, among others, that there had been no negligence shown and no evidence of negligence. The plaintiff's counsel then stated:

"I oppose this, as it is not a question of negligence. It is a question of trespass."

After this declaration the defendant was not called upon to disprove negligence, and might assume that no liability was claimed by reason of any negligence upon its part in the construction of its road or in providing for the flow of the stream.

JOHN M. KELLOGG, J. (dissenting). The laws of this state permitted the defendant to build and maintain its railroad. They did not direct at what particular place or in what particular manner the roadbed should be constructed; nor did they require defendant to dam up the canal, so that the mountain stream would not have a sufficient outlet, or to take away the stone sustaining wall of the old canal. Any consequential injury arising to any one from the proper operation of the railroad is not a subject for damages against the company, as it is proceeding under statutory authority. But if the defendant, by changing a water course or removing the sustaining wall of the canal, has taken water which otherwise would not come upon the plaintiff's land, and conducted it thereon, to his injury, it cannot screen itself behind the statute, which only permitted it to build and maintain its railroad. "It is now the settled doctrine in this state that the powers granted to such corporations are to be construed as privileges conferred, but upon the understanding that they shall be exercised in strict conformity to private rights and under the same responsibility as though the acts done in execution of such powers were done by an individual. Cogswell v. N. Y., N. H. & H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701." Booth v. R., W. & O. T. R. R. Co., 140 N. Y. 267, 272, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552; Brown v. Cayuga, etc., R. R. Co., 12 N. Y. 486; B. & P. R. R. Co. v. Fifth Bap. Church, 108 U. S. 317, 27 L. Ed. 739. The Bellinger Case, cited, does not control this case; and if, standing alone, it might seem to announce a new rule, the Booth Case, above cited, seems to weaken its effect. Bellinger's injury came, as he alleged, from an embankment and bridge built by defendant across certain low lands, which caused an overflow upon his premises. The defendant attempted to prove that the embankment and bridge were carefully and skillfully constructed with reference to the creek. The evidence was excluded, and the Court of Appeals reversed the judgment for the plaintiff upon that ground. That case did not raise a question of pleading; nor did it decide that a company having a right to build a railroad may build it in its own way, without regard to consequential injuries to others.

While the defendant owned the bed and towpath of the canal for the purpose of its construction, that right was qualified somewhat by section 4, c. 469, p. 959, of the Laws of 1899, amending the act incorporating the Hudson & Delaware Canal Company, its predecessor in title. The amendment permitted the company to abandon its canal, but provided, among other things, that:

"It was the duty of the company to make such provision for the streams now discharging into said canal on that part of it which may be so discontinued as will restore them to their original channels; but, where to make such restitution has become, or is now, impossible, such provision shall be made for the discharge of the water of such streams from said canal as the existing situation now permits, and as will avoid injury to other property."

There was some evidence tending to show that the canal had been abandoned pursuant to this statute; that the defendant, as the successor of the canal company, had dammed up the canal near the point where a stream flowed into it, and had provided no adequate means

for its water to escape from the canal, and thus forced it upon the plaintiff's premises through a place in the canal bank which it had negligently weakened by the removal of the stone sustaining wall. If these facts were established, it had violated the statutory duty imposed upon it as the successor in title to the canal company, and also the common-law duty of using due care not to injure the plaintiff by the use which it makes of its property.

It is unnecessary here to consider whether or not this statute and the rule fixing the responsibility of him who changes a natural water course applies to this case and requires the defendant to keep this stream within its new channel. In the view most favorable to the defendant it was a question of fact whether it had exercised proper care and precaution to prevent the waters of the mountain stream and the canal from injuring the plaintiff and others. That was the real question litigated upon the trial. Plaintiff alleged a wrongful invasion of his property rights. If the act of the defendant was the cause of the overflow, then its only defense, if it had one, was that it was building its track upon its right of way and property, and that in all its acts it exercised reasonable care for the protection of plaintiff's property. If it did not allege and prove these things, then the plaintiff maintained his claim that defendant wrongfully caused his loss. It is not necessary for the defendant to bring his action for negligence; but he may allege the waters as wrongfully thrown upon him by the defendant, and leave it to justify by showing the necessity and the propriety of its actions.

But there is no question of pleadings in this case. The facts were proved without objection as to the form of the complaint. One of the grounds for the motion for non-suit is that "there is no evidence of any negligence on the part of the defendant in such construction," and "the case is destitute of any evidence of negligence for which the defendant can be made responsible." So that, if the facts are found with the plaintiff, he may recover either upon the ground of negligence or trespass. In Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274, by negligently blasting upon his own lands the defendant caused a piece of wood to fly into the highway and hit the plaintiff lawfully thereon, and the plaintiff recovered. It was conceded that the defendant was lawfully blasting without negligence or want of skill; but the court held plaintiff was entitled to recover for the trespass, although the complaint was for negligence, and that any objection to the pleadings in that respect were waived. Here it is evident the complaint was dismissed, not upon the pleadings, but upon the ground that there was no evidence tending to show any liability. It is now too late to urge objections to the complaint. They were waived by the manner in which the case was tried. If the complaint had been criticised upon the trial, there was ample power for an amendment.

Upon all the evidence it was a question of fact for the jury whether the water which entered upon the plaintiff's land and injured it came from the canal, and, if so, whether the acts of the defendant in removing the retaining wall and in obstructing the canal caused the

water to flow from the canal upon the plaintiff's premises. If the injury was so caused, the defendant is liable in an action for trespass. Wickham v. Lehigh Valley R. R. Co., 85 App. Div. 182, 83 N. Y. Supp. 146, and cases cited; Sullivan v. Dunham, supra, and cases cited; Wheeler v. Norton, 92 App. Div. 368, 86 N. Y. Supp. 1095. In Wickham v. Lehigh R. R. Co., supra, the defendant was held liable under circumstances quite similar to the facts here. In Mairs v. Manhattan Real Estate Ass'n, 89 N. Y. 498, the defendant by permission of the municipal authorities made an excavation upon its own premises. During a severe rainstorm water found its way from this excavation into the plaintiff's cellar, and the defendant was held liable for trespass, irrespective of the question of negligence, "upon the principle of Hay v. Cohoes Company, 2 N. Y. 169 [51 Am. Dec. 279]; St. Peter v. Denison, 58 N. Y. 416 [17 Am. Rep. 258]; Jutte v. Hughes, 67 N. Y. 267, in which it is held that where one is making improvements on his own premises or without lawful right trespass upon or injures his neighbor's property by casting material thereon, he is liable absolutely for the damage, irrespective of any question of care or negligence. A license from the municipal authorities cannot affect the question of responsibility in such cases."

The action was therefore properly brought as one for trespass, and counsel properly insisted that trespass was the ground upon which he was entitled to recover. If the defendant was right that proving due care proved a defense, it did not change the action into one for negligence. It simply was an attempt by him to excuse the act which was proved against him as a trespass. It is unnecessary here to say whether proof of due care was or was not a defense. Suffice it to say that upon the facts shown the plaintiff was entitled to have his case considered by the jury.